O'ROURKE ENGINEERING CONSTRUCTION COMPANY and DUIT, INC., Respondents, *v.* THE CITY OF NEW YORK, Appellant.

Second Department, April 25, 1930.

*Vine H. Smith* [*Arthur J. W. Hilly, Corporation Counsel, Joseph T. Flynn* and *J. Joseph Lilly* with him on the brief], for the appellant.

*Howard G. Wilson* [*John C. Wait* with him on the brief], for the respondents.

KAPPER, J. Plaintiff O'Rourke Engineering Construction Company had a contract with the city of New York for sewer work in the borough of Queens. It assigned, with the consent of the city, a portion of the work to John J. Creem.

The complaint contains two causes of action; the first, a claim of the O'Rourke Company for damages alleged to have arisen by reason of the delay of the city in making payments under the contract when due, and for excess grout used in the carrying on of the work; the second is a claim by Creem for damages also alleged

to have been caused by the city's delay in making payments when due and for various items of work over and above the terms of the contract. Creem's claim was assigned to the plaintiff Duit, Inc., and that assignee and the O'Rourke Engineering Construction Company have joined in the one complaint, in the separate causes of action stated, for the purpose of recovering upon said claims. The jury awarded the O'Rourke Company a verdict of $10,057.52, and Duit, Inc., $24,085.71, for which amounts, together with interest a single judgment was entered.

It is the contention of the appellant that the trial court erred in submitting to the jury the question whether the plaintiffs were entitled to recover damages by reason of the delay on the part of the city in making payments pursuant to the monthly estimates.

As the record presents itself, there is no doubt that the recovery by the O'Rourke Company was wholly for damages alleged to be due to the O'Rourke Company's stoppage of the work because of a lack of funds attributable by the company to the city's omission or failure to make payments when due and as the work progressed. The testimony on behalf of the O'Rourke Company was sufficient to establish the failure of the city to make monthly payments, as provided by the contract, to the extent of eighty-five per cent of completed or certified work, for the months of December, 1920, and January and February, 1921; one payment of $24,000, which should have been paid within a brief number of days after December 31, 1920, not being paid until March 7, 1921, and another payment of $33,000, due under a certificate of February 5, 1921, not having been paid until April 8, 1921. Because of such failure or omission of payment, the O'Rourke Company shut down work on February 21, 1921. O'Rourke recommenced work on March 21, 1921, and claims damages by reason of the idleness of its plant during the interim. Together with the eighty-five per cent of deferred payments and the fifteen per cent retained until final completion, it was the claim of the O'Rourke Company that there was a sum of upwards of $102,000 " invested in this contract as affecting the exhaustion of our credit." As testified to on behalf of the O'Rourke Company: " Q. At that time did you quit work on February 18th? A. We did. Q. Why did you quit? A. Because we run out of money and we didn't know when we were going to get any more. Q. On February 28th what was your bank account? A. $453.76. Q. Had or had not your credit been practically exhausted? A. It was; *it was why we stopped.* Q. How long was your work of construction in this tunnel shut down? A. From February 18th to March 21st; we started up tunnel work again on March 21st. Q. When did you get any payments after your shut down February 18th? A. We

received a payment on March 17th. Q. How much was that for? A. $24,117.05. Q. That was after — for your December work, was it? A. It was. Q. When did you get your other payment under Estimate No. 7? A. April 12th, 1921. Q. And how much was that? A. $33,258.80. Q. And when did you begin, you say? A. When did we begin what? Q. Begin work again. A. March 21. Q. And is that what you call shut down? A. That is, we started moving the tunnel again, shoving the shield on March 21st."

It was further shown that by reason of the idleness of the plant, the expense of shutting it down while necessary payments for certain employees had to be met (insurance, depreciation of machinery and equipment, their rental value, and bond premium for the time of idleness), aggregated an outlay or loss of $10,475.

As the other plaintiff, Duit, Inc., the assignee of Creem, also claimed losses amounting to $44,000, by reason of the stoppage of the work due to the failure of the city to make payments when due, the question raised in that respect by the city appellant may be treated at the same time and in the same way as the claim of the O'Rourke Company. Creem testified: " Q. Mr. Creem, how much, if you know, work approximately had you done February 3d when you stopped your work, or early February, which you had not been paid for between October 25th and early February? A. About $84,000 worth. Q. Does that mean the full amount of the work you have done, or is that with the 15 per cent deduction? A. That's with the 15 per cent deduction. Q. How much, if you know, approximately of retained percentages had the City at that time withheld from you? A. About $67,000. Q. And you had about $151,000 of your money tied up in this work, the $84,000 and $67,000? A. Yes. Q. On February 3d why did you stop work? A. *I considered I had to, for financial reasons.* Q. With $151,000 in this work, for which you had not been paid, had that or not exhausted your credit? Mr. Flynn: I object, if your Honor please. A. It had. Mr. Flynn: Let the witness state why he stopped. This witness's characterization of funds, and so forth, is — The Court: You asked why he stopped. Mr. Wait: I did. The Court: Let him tell you. Why did you stop? The Witness: *My credit was exhausted.* The Court: You ran out of money? The Witness: Yes."

The learned trial justice charged, in submitting the claim of the O'Rourke Company, apart from the claim for excess grouting (to which reference will hereafter be made), as follows: " The other item which is involved and which the plaintiff makes a claim upon is for the damage it suffered by reason of the idleness of his plant and the expense entailed upon the plaintiff by reason of that item,

an idleness which was brought upon the plaintiff, according to its claim, by the failure of the defendant, the city, to make payments according to the terms of the contract. The city failed to make payments according to the terms of the contract, and if the suspension of the work was due to that failure upon the part of the city, then the O'Rourke Engineering Construction Company is entitled to recover for whatever that damage was worth, and, fixing the items or elements which go to make up this claim for damages, you will determine from what you have heard here, the evidence that you have heard, the testimony before you, just what that damage was. The plaintiff claims that it is made up of a variety of items, and I shall not enumerate the particular items which the plaintiff has produced in evidence before you to indicate what his damage was. I do say to you, however, that the city having withheld its payments, if its suspension was due to the failure of the city to make the payments, then it is entitled to recover under that item of its claim for whatever those damages were."

The same submission of law was charged as to the claim of plaintiff Duit, Inc.

The question is whether the damages awarded for delay in making payments are such as may fairly be supposed to have entered into the contemplation of the parties when they contracted, i. e., were they such as might naturally be expected to follow the violation of the contract in the respect pointed out. The respondents cite no case which justifies the award of damages for the delay in paying the sums due, when due. Cases there are which authorize a contractor's recovery for certain delays due to the fault of the party with whom he contracted. Such were *Allamon* v. *Mayor, etc., of Albany* (43 Barb. 33), where the city let out a carpenter's contract to do work upon a school building *which was to be placed in readiness by the city for the carpenter's work* and had not been so placed for a period of three months after the letting of the contract, the result being that, during the interim, prices for both materials and labor had increased; *Weeks* v. *Rector, etc., of Trinity Church* (56 App. Div. 195), where the contractor was delayed in his performance by the owner's neglect in securing a building permit; *Barnum* v. *Williams, No. 1* (115 App. Div. 694), where delays were occasioned directly by the owner in not having the building in a condition for the contractor to install his particular portion of the work; and, likewise, in *Mansfield* v. *N. Y. C. & H. R. R. R. Co.* (102 N. Y. 205), the contractor, under a penalty for delay, was required to begin work upon foundations to be prepared by the owner, which foundations were not completed at the time when the contractor's work was to commence.

In all of these instances, and they might be greatly multiplied, the damages flowed from causes that were obviously natural consequences of the other contracting party's default. Such, however, cannot, in my opinion, be claimed of a failure to make prompt payments. Numerous cases hold that such damages are not within the contemplation of the parties to the contract. In *Wharton & Co.* v. *Winch* (140 N. Y. 287, 293) it was said: " It is undoubtedly true that the defendant's failure to pay the installment was such a breach of the contract as absolved the plaintiff from all obligation to further perform on his part while the default continued. Nor was he bound to grant the defendant any indulgence and wait for any period of time in order to enable him to make good his broken promise. In that sense punctual payment was a condition precedent. The obligation of the plaintiff to proceed under the contract depended upon it. If it was not fulfilled, one of two courses was open to the plaintiff. He might at once rescind the contract and refuse to go on, and immediately recover for the materials furnished and services rendered under it; or he might proceed with the performance of the contract on his part, and at the same time, if he chose, bring suit to recover the past due installment."

This court (per RICH, J.) in *Mechanics' Bank* v. *City of New York* (164 App. Div. 128, 130), say: " It is clear from his evidence that his refusal to proceed with the work in the spring of 1906 was because of non-payment of the money he was entitled to receive under the third progress certificate, and it was not until the delayed payment was made and the work had been accepted that he resumed the work of construction. There is no evidence indicating that the city ever raised any question about the further work to be done to finish the contract work. Its contention was as to the work that had been done. If the contention of the contractor that the failure to pay the money he was entitled to be paid constituted a breach of the contract by the defendant be conceded, he had two remedies: *First,* he might stop work, repudiate the contract and recover the contract price for the work done, or *second,* he might continue the work and sue for the past-due installment."

In *Ryan* v. *City of New York* (159 App. Div. 105) HOTCHKISS, J., writing for a unanimous court, said (p. 111): " I can see no legal ground for awarding plaintiff general damages for any loss occasioned by delay on the part of the city in making its payment to him on contract time. For such delays legal interest is presumptively sufficient compensation, and that plaintiff has already been awarded. While a failure by the city to pay as agreed might have afforded plaintiff ground for rescinding the contract (*Wharton & Co.* v. *Winch,* 140 N. Y. 287), he did not elect so to do. After having

proceeded with the contract to completion it would certainly be a novelty in the law if he could recover, beyond interest, damages for the city's failure to pay as and when agreed."

In *Green Briar Drainage Dist.* v. *Clark* (292 Fed. 828) the United States Circuit Court of Appeals, speaking on this subject of the failure of a municipality to make a payment on the contract at the time therein specified, for which reason, the contractor testified, he was unable to continue to operate his plant, say (p. 831): " But if the jury adopted Clark's contention and found that the district did delay both the initial payments and the payments from time to time to be made as the work progressed, and that as the result Clark did not have money with which to carry on the work and his equipment lay idle for considerable time, the question as to the lawful measure of damages at once arises. Generally, where there is delay in the making of stipulated payments, the only recoverable damage accruing to the payee is interest at legal or contractual rate for the time of delay [citing cases]. This being so, it was manifestly and seriously erroneous to admit evidence of loss to Clark (apart from interest) through the idleness of his equipment."

No case to which my attention has been called decides otherwise. The rule of damages was succinctly stated by Chief Justice WAITE in *Loudon* v. *Taxing District* (104 U. S. 771). The learned chief justice stated the first question in the case as follows: " 1. Whether, because the city of Memphis neglected to pay the debts it owed the appellant when they fell due, it must make good to him the losses he sustained on that account through exactions of extraordinary interest and discounts on sales of securities to raise money to meet his own obligations." He answered it thus: " As to the first of these questions, it is sufficient to say that all damages for delay in the payment of money owing upon contract are provided for in the allowance of interest, which is in the nature of damages for withholding money that is due. The law assumes that interest is the measure of all such damages."

The First Department of this court, in *Mercantile Factors Corp.* v. *Warner Bros. Pictures, Inc.* (215 App. Div. 530, 534), in following the case last cited, say: " By the rule of the common law the only amount recoverable as damages for the withholding of money was lawful interest upon the amount due."

The respondents, after the period of their voluntary suspension of work, renewed their operations and completed their respective portions of the contract. They did not avail themselves of their right to insist upon a breach by the city and to sue for damages besides the money actually owing, which was their sole remedy, as

the authorities point out. They neither abandoned the contract nor considered it at an end, and while it may have caused them some outlay of money, yet that condition can only be ascribed to the plaintiffs' lack of funds or lack of credit. For neither of these results can the expenses incurred by the suspension of work be the basis for a recovery of damages. Sutherland on Damages (Vol. 1 [3d ed.], § 76) points out that on a contract involving the payment of money the unpaid principal, together with lawful interest, is the measure of damages, and " the invariable measure of recovery in a creditor's action against his debtor; " that (pp. 228, 229): " The failure to pay a debt when due may disappoint the creditor and embarrass him in his affairs and collateral undertakings; he may consequentially suffer losses for which interest is a very inadequate compensation; but they are remote and do not result alone from the default of his debtor. Money, like the staples of commerce, is, in legal contemplation, always in market and procurable at the lawful rate of interest; and the same principle which limits a disappointed vendee's recovery against his defaulting vendor to the market value of the commodity which is the subject of his contract restricts the creditor to the principal and interest. The practical difficulty to a creditor of borrowing the money, where the debtor is withholding the sum he owes and which is wanted, and that of a vendee in making a new purchase, after he has paid the defaulting vendor for the goods needed, is the same. No party's condition, in respect to the measure of damages, should be worse for having failed in his engagement to a person whose affairs are embarrassed than if the same result had occurred with one in prosperous or affluent circumstances."

From what has been stated, I am of opinion that the recovery of damages for delay in making payments may not be upheld.

The only other item sued for by the plaintiff O'Rourke Engineering Construction Company is a claim for excess grout installed in this sewer work. This item is claimed to have been over and above the contract requirements and in the nature of extra work and material and of a value of $19,000 as claimed in the complaint. The appellant urges that there was no basis for this claim for excess grout. The parties are in accord that there was to be no excess charge unless the amount of grout exceeded ten cubic feet for every linear foot of sewer and that the proof established that the total amount of grout used by the contractor would make but eight and three-tenths cubic feet of grout for every linear foot of sewer tunnel. And so the learned trial justice charged that unless the jury found the quantity of grout installed to have exceeded ten cubic feet per linear foot of sewer, the O'Rourke Company could not recover

under its claim of excess grout. The respondents' brief concedes the correctness of the charge and the accuracy of the quantities referred to, as well as the requirement of the contract that no excess charge was to be placed upon the city unless the installation of the grout exceeded ten cubic feet per linear foot of sewer; and so the respondent O'Rourke Company, by its brief, concedes that the claim for grout was entirely ruled out by the court's instructions " as both plaintiff and defendant's trial counsel appreciated at the trial." Hence, that question is not in the case, and this leaves no basis for the recovery of the O'Rourke Company, and leads to the conclusion that the first cause of action, being that of the O'Rourke Company's claim, should be dismissed, with costs of the trial and without costs of the appeal.

Coming now to the second cause of action, that of Duit, Inc., as assignee of Creem, what has been above stated disposes of so much of the claim of that plaintiff as related to damages for delay upon the part of the city in making payments on account of the work as it progressed. There is another claim to which the city's brief addresses itself, and that is that the recovery by the Duit Company of expenditures made in keeping the street surface of one of the streets that bisected the sewer open to traffic, was not an outlay that was independent of the obligations of the contract. A trolley railroad ran upon the surface of this bisecting street, and it was to permit continuance of operation of the railroad company as well as all other vehicular and pedestrian traffic, that the contractor was obliged by the borough president and the engineers to deck over the excavated street and to do the work by a tunneling method instead of an open cut method at this particular point. It was alleged by Duit, Inc., that the method required took more time and was more expensive, entailing an increased cost of over $8,900. A clause in the contract required the contractor to keep open " passageways " and to protect the same when exposed and dangerous to public travel, and that such passageways " shall, as may be required, be planked or bridged by the Contractor, at his own expense." Another clause in the contract required all the work to be done " in open trenches or excavations " and that " no tunneling shall be done except with the consent of the Engineer, or as specified." Nowhere in the contract is there any specific mention of the particular street in question and the method of pursuing the work thereunder, nor of any other street in like situation. It was testified by Creem that there was a customary method of taking care of street railway passengers when a sewer was being laid underneath and across that street, the duty then devolving upon the railroad company to

stop its cars and transfer passengers to the opposite side of the street. The question is not free from doubt. The contract is none too clear, and is open to proof showing its limitations in like circumstances. While the proof referred to is exceedingly meagre, it may be, upon a new trial, that a more comprehensive showing of the right of recovery for the item may be presented.

Other items of recovery or right thereto upon the part of the plaintiff Duit, Inc., are not the subject of contest on this appeal.

I advise that the judgment in favor of the plaintiff O'Rourke Engineering Construction Company be reversed upon the law and the facts, without costs, and the complaint as to it dismissed, with costs; and that as to the plaintiff Duit, Inc., the judgment be reversed upon the law and the facts and a new trial granted, with costs to abide the event.

LAZANSKY, P. J., YOUNG, HAGARTY and CARSWELL, JJ., concur.

Judgment in favor of plaintiff O'Rourke Engineering Construction Company reversed upon the law and the facts, without costs, and complaint as to it dismissed, with costs; judgment as to plaintiff Duit, Inc., reversed upon the law and the facts and a new trial granted, with costs to abide the event.