**Leopold MEINRATH, Plaintiff,**

v.

**The SINGER COMPANY, Defendant.**

**No. 79 Civ. 2442.**

United States District Court,
S. D. New York.

July 3, 1980.

Whitman & Ransom, New York City, for plaintiff; Paul M. Brown, New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant;

Judith S. Kaye, Jeffery H. Sheetz, Robert J. Kochenthal, Jr., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Leopold Meinrath is a Belgian entrepreneur engaged in the marketing and distribution of computers and computer-related products principally in the Benelux countries and France. He commenced this suit to recover payments of "bonus compensation" allegedly due under an Agreement of Purchase and Sale (the "Agreement") entered into among him, the four "Unicard companies" in which he had controlling interests,[1] and the defendant The Singer Company ("Singer") on September 7, 1973. The detailed terms of that Agreement have been described in an earlier opinion by this Court, familiarity with which is assumed.[2] For purposes of this motion, it is sufficient to say that the Agreement was comprised of three integrated parts: (1) an agreement of purchase and sale, by which Meinrath agreed to sell and Singer to purchase for the sum of $280,000 his exclusive rights to distribute Cogar computers and computer-related equipment throughout Europe through his four "Unicard companies"; (2) an employment agreement, whereby Singer hired Meinrath to aid in the sale and distribution of its subsidiary Cogar's computers in Europe at an annual salary of $40,000; and (3) a bonus compensation agreement, by which Singer agreed to pay to Meinrath commissions, ranging from a minimum of $220,000 to a maximum of $720,000, for orders booked for the sale or lease of the computers. Only the last of these is at issue here.

In his amended complaint Meinrath seeks recovery of three separate items of damage, each under a different theory of law.

First, he claims that as of the date of the Agreement he "had consummated or [was] in the process of consummating" enough sales to entitle him to receive the maximum amount of bonus compensation under the contract; that is, $720,000. The parties agree that to date Meinrath has received bonus compensation payments of $220,000 in American currency[3] and later payments in Belgian francs in amounts equivalent to $200,000. Thus, his first claim is for $300,000—the difference between the amount he received in bonus compensation and the maximum allowable amount, to which he claims entitlement.

The second item of his claim is based upon the dramatic decline of the dollar vis-a-vis the Belgian franc in the years since the unpaid bonus compensation allegedly became due. Meinrath claims that, in addition to the $300,000 in bonus compensation, he is entitled to $155,000, which represents the "present-day American currency equivalent of the number of additional Belgian francs which [he] should have been paid as and when maximum Bonus Compensation was due and owing." The contract, upon which plaintiff predicates his claim, mentions only amounts in American dollars; it does not refer to or require payments in Belgian or any other currency.

Third, Meinrath claims "consequential damages" in the amount of U.S. $770,000. This claim is based upon allegations that Singer knew at the time it entered into the contract that Meinrath had substantial subsisting business ventures that would survive the Agreement; that Meinrath repeatedly apprised Singer and its representatives of the necessity for prompt payment of the bonus compensation as it became due in order to provide working capital for his Unicard ventures; and that as a direct,

---

1. They are: Unicard Nederland B.V., a corporation organized under the laws of The Netherlands; Unicard Belgique (Luxembourg) S.A., a corporation organized under the laws of Belgium; Unicard France, S.A., a corporation organized under the laws of France; and Mebraco, a corporation organized under the laws of Switzerland, which owned 100% of the shares of the foregoing three companies.

2. *Meinrath v. Singer Co.*, 482 F.Supp. 457 (S.D. N.Y.1979).

3. Singer advanced this money to Meinrath prior to the signing of the Agreement in September 1973; $125,000 was advanced in July 1973.

foreseeable result of Singer's failure to make timely payments to which he claims he was entitled but defendant denies, Meinrath's other businesses suffered substantial losses, which in turn injured him.

In its amended answer Singer raises eight affirmative defenses ranging from the allegation that plaintiff's amended complaint has failed to state a claim, to assertions that Meinrath breached warranties in the contract and failed adequately to perform his employment obligations under the contract. In addition, Singer has asserted counterclaims for: (1) the return of any bonus compensation paid to plaintiff that in fact was not due under the agreement, and (2) for $3,597.57 allegedly owed by one of Meinrath's companies, Unicard France, for computer-related goods shipped to it by Singer's subsidiary, the Cogar Corporation ("Cogar"), on November 7, 1972, which remains unpaid.

Presently before the Court are cross-motions by Singer for summary judgment on the consequential damages and dollar depreciation claims; and by plaintiff to strike all eight affirmative defenses, as well as for summary judgment on the two counterclaims. In short, the only claim not challenged here, and which the parties at least tacitly agree must be resolved by the trier of fact, is plaintiff's basic claim for a balance of $300,000 in bonus compensation. Each of the parties' contentions will be examined in turn.

## I.

### *Defendant's Motion*

#### A. *Consequential Damages*

Meinrath's claim for consequential damages consists of (1) losses of approximately $648,000 in invested capital suffered as a result of the liquidation of Unicard France in 1975, and of the forced sale of all assets of Unicard Nederland in 1974 for the nominal sum of $2, and (2) a $122,000 decline in the net worth of Unicard Belgique which Meinrath continues to own and operate, due to operating and tax losses allegedly attrib-

utable to the losses suffered by the other two Unicard companies. These latter losses, which plaintiff's counsel at oral argument acknowledged are "the most tenuous" of Meinrath's claims, are asserted solely on behalf of the company, despite the Court's ruling of January 10, 1980 and plaintiff's repeated representations that only claims personal to Meinrath are cognizable in this action. He disregards Unicard Belgique's corporate entity upon a claim that he is its sole shareholder and entitled to its assets upon a distribution but this also disregards the claims of and rights of the corporation's creditors.

The essence of each of these claims is that at the time of the signing of their Agreement and even prior thereto, Singer had a special awareness of the Unicard companies' financial plight and their dire need for funds with a consequent obligation upon Singer to make timely payments of bonus compensation. In essence, plaintiff seeks to parlay Singer's knowledge of his and his companies' financial predicament into a claim that Singer was required to provide them with necessary financial capital by making prompt payment of all amounts due under the Agreement. The Agreement contains no such explicit or implicit undertakings; plaintiff was to be paid commission on revenues collected from sales and leases of equipment by Singer affiliates during a period of two and one-half years after September 1, 1973. No liquidated damages are specified in the event of nonpayment or late payment of bonus compensation.

This is Singer's second motion to dismiss the consequential damages claim. The first was made before discovery had commenced and before the precise nature of plaintiff's claim had been clearly defined. In denying relief, the Court's opinion of November 7, 1979 recognized that the rule of this Circuit, announced in *Spang Industries, Inc. v. Aetna Casualty & Surety Co.*,[4] authorizes the recovery of consequential damages in cer-

---

4. 512 F.2d 365 (2d Cir. 1975).

tain "special circumstances."[5] Now that discovery has been completed, it is clear that plaintiff's claim does not come within the *Spang* rule and must be dismissed as a matter of law.

■ Singer does not dispute that for purposes of this motion, both before and after September 7, 1973, it had actual knowledge of Meinrath's other business ventures, and of his and their need for funds to finance these other enterprises. Moreover, Singer acknowledges that Meinrath made several unsuccessful demands for payment of bonus compensation he alleged was due him. We assume for purposes of this motion that in fact the payments were wrongfully withheld when due. Nonetheless, under these facts Singer is not liable for consequential damages for the failure of Meinrath's other business ventures, unrelated to the contract. Meinrath's essential claim is one for payment withheld although due; the consequential damages stemming from such a claim are not compensable. Almost one hundred years ago the Supreme Court in *Loudon v. Taxing District*[6] resolved the precise issue now before the Court and in the process formulated a rule which survives today. The plaintiff in *Loudon* had contracted with the City of Memphis to repair certain streets and public places. When the City failed to make payments upon the notes it had tendered, plaintiff was required to borrow funds at "exorbitant" rates of interest and to sell its securities at a discounted rate in order to meet its obligations. Having won a judgment on the notes, plaintiff sued to recover the interest paid and its other related losses as consequential damages. The Court limited plaintiff's relief to recovery of interest at the prevailing legal rate:

[A]ll damages for delay in the payment of money owing upon contract are provided for in the allowance of interest, which is in the nature of damages for withholding money that is due. The law assumes that interest is the measure of all such damages.[7]

■ The rule of *Loudon* has been adopted by the New York courts,[8] and is thus applicable to this contract, which by its terms invokes New York law. Moreover, all of the commentators have held that where the alleged breach of contract consists only of a failure to pay money, remedy for the breach is limited to the principal owed plus damages in the form of interest at the prevailing legal rate. As Professor Williston has noted:

In an action by a creditor against his debtor for the non-payment of the debt, no other damages [than the sum of money itself with interest at the legal rate from the time when it was due] are ever allowed.

When a large order of goods is bought on credit from a seller known to have but little capital, it may be plainly foreseeable by the buyer when he enters into the transaction that failure to pay the price when it is due may ruin the seller financially, and such a consequence is both proximate and natural.

The universality of the rule limiting damages to interest is, therefore, based on the policy of having a measure of damages of easy and certain application, even though occasionally leading to results at variance with the general principle of compensation.[9]

---

**5.** *Id.* at 370. *See Meinrath v. Singer Co.,* 482 F.Supp. 457, 459 n. 3 and cases cited therein (S.D.N.Y.1979).

**6.** 104 U.S. 771, 26 L.Ed. 923 (1881).

**7.** *Id.* at 774.

**8.** *See O'Rourke Eng'r Const. Co. v. City of New York,* 229 A.D. 261, 241 N.Y.S. 613, 619-20 (2d Dep't 1930); *Mercantile Factors Corp. v. Warner Bros. Pictures, Inc.,* 215 A.D. 530, 214 N.Y.S. 273, 277-78 (1st Dep't), *aff'd,* 244 N.Y. 504, 155 N.E. 873 (1926); *Abate v. Bushwick*

*Savings Bank,* 207 Misc. 372, 138 N.Y.S.2d 140, 144 (City Ct., N.Y.1955). *Cf. Avalon Const. Corp. v. Kirch Holding Co.,* 256 N.Y. 137, 142, 175 N.E. 651 (1931).

**9.** S. Williston, 11 *Contracts* § 1410, at 605–06 (3d ed. 1968) (footnotes omitted). *See* J. Calamari & J. Perillo, *Contracts* § 226, at 358-59 (1970); C. McCormick, *Damages* § 139, at 570 n. 28 (1935).

In opposing the motion, plaintiff has not cited a single authority that supports the award of damages other than interest where the claim is for payments withheld. Our own independent search reveals none either. Instead, plaintiff strains to analogize this case to *Spang, supra,* in which our Court of Appeals upheld the award of consequential damages to a construction company which incurred emergency expenses in completing construction of a bridge after its subcontractor had breached its obligation timely to deliver steel girders before the onset of winter. That case is distinguishable from the instant case. In *Spang* the contract was for the provision of a specialty item not easily replaceable or found elsewhere. Moreover, the damages suffered, which flowed from plaintiff's crash program to complete the bridge, were a natural outgrowth of the breach. They related solely to plaintiff's efforts to complete the breached contract and thereby mitigate damages. Likewise, in *For Children, Inc. v. Graphics Int'l Inc.,*[10] a case also cited by Meinrath, plaintiff recovered lost profits when the defendant failed to provide a unique article (children's "pop-up pictures") unobtainable elsewhere;[11] the damages were suffered by the same enterprise that was injured by the breach. Those cases cannot be analogized to the facts of the instant case. Here the plaintiff's claim is not for a unique article, but only for payments withheld although allegedly due. Moreover, the claimed loss was not related to the completion of the contract; instead, it was incurred in other, wholly unrelated ventures. Plaintiff's argument that his injury was foreseeable to Singer at the time of the contract is unavailing; if he wanted to impose liability upon Singer for the failure of his business empire because of non-

payment of amounts allegedly due under their contract, he could have bargained for that result by fixing liquidated damages for a breach. Accordingly, we hold that as a matter of law plaintiff's consequential loss is too remote from the main injury to be compensable and too speculative to be ascertainable; plaintiff is barred from recovering such damages.

As Professor Williston has noted, there are sound policy reasons for limiting recovery in cases such as this to lost interest. If allowed to assert the consequential damages claim, plaintiff would infuse the trial of a simple contract dispute with a vast array of evidence concerning his far-flung business empire.[12] To permit him to do so upon a claim of payments withheld is only one step less extreme than permitting him to prove that, had he received timely payments, he would have invested his money wisely and profited thereby. If such were the case every contract dispute would be rendered complex, limited only by counsel's imagination and conceptual theories of unrealized profits and opportunities.

Singer's motion for summary judgment on the issue of consequential damages is granted.

### B. *Dollar Devaluation Claim*

Meinrath also seeks damages for the loss suffered by reason of the dollar's devaluation between the time the contract was breached and the present. He argues that even a full payment of the $300,000 bonus compensation allegedly due under the contract will not make him whole, since the value of that money has sharply declined in the years since payment first became due. He claims that "simple fairness" requires a

---

10. 352 F.Supp. 1280 (S.D.N.Y.1972).

11. *See also Czarnikow-Rionda Co. v. Federal Sugar Refining Co.,* 255 N.Y. 33, 44, 173 N.E. 913 (1930); *Chapman v. Fargo,* 223 N.Y. 32, 37 40, 119 N.E. 76, and cases cited therein (1918).

12. The parties appear to agree that the consequential damages claim, if permitted, would swallow the main claim of an alleged unpaid

$300,000 bonus compensation and would extend the trial a period of a full month. Although this consideration can play no part in the disposition of the motion, if plaintiff is without a right to assert the consequential damages claim, the defendant should not be subjected to the burden and expense entailed in a protracted and intricate trial. *See Schwartz v. Broadcast Music, Inc.,* 180 F.Supp. 322, 325 (S.D.N.Y.1959).

reimbursement for the alleged loss, and that failure to compensate for the dollar's decline would be to reward the wrongdoer for its breach.

The argument has only surface appeal. Closer scrutiny reveals that it rests upon two assumptions, the first of which is erroneous; and the second, directly supportive of the defendant's position.

First, Meinrath argues that Singer was obligated to make bonus compensation payments in Belgian francs, and that the parties so intended when they signed the contract. There is not a scintilla of evidence to support this assumption. Although the contract does not expressly call for payment in American currency, all of the figures mentioned are in U. S. dollars. Moreover, the contract is governed by the law of the State of New York; the parties could not have been unaware that, had a dispute developed which was adjudicated in this country, an American court could render judgment only in American currency.[13] Furthermore, Meinrath acknowledged at his deposition that the parties had no discussions at all concerning the currency of payment. Indeed, of the $420,000 he actually received in bonus compensation, more than half was paid in American dollars, which Meinrath accepted without comment or objection.

Despite these facts, Meinrath argues that the conduct of the parties establishes his entitlement to payment in Belgian francs. Here he contends that Singer paid him $200,000 of the $420,000 bonus compensation in Belgian francs, and that a Singer attorney asserted that Singer had the right to make payments either in New York or in Europe through any of its European subsidiaries. This conduct, however, at most establishes only that Singer *contended* that it had a right to pay in any currency used by its subsidiaries; it does not establish or even suggest that Singer was *required* to make payments in any particular currency, or that Meinrath was entitled to demand such payment. Indeed, Meinrath's own admission belies such a claim. In his most recent motion papers, filed one week after Singer moved to dismiss, Meinrath explicitly acknowledged that he "makes no claim that payments of bonus compensation were required to be made in Belgi[an] francs. . . . ."[14] In short, this record does not support the contention that Meinrath had a right to payment in a specific foreign currency.

The second part of Meinrath's argument is inappropriate rather than erroneous. He cites a line of cases which hold that if a breached contract requires payment in a foreign currency, American courts awarding judgment in dollars must use the applicable conversion rate in effect on the date of the breach, rather than on the date of the judgment.[15] Even if Meinrath could prove entitlement to payment in Belgian currency, application of the "breach-date rule" precisely undercuts and refutes his point. Converting to dollars on the date of the breach leaves plaintiff without compensation for the subsequent decline of the dollar. Indeed, the only way in which Meinrath could be made whole for the loss

**13.** *Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 954 & n. 5 (2d Cir. 1951) (citing cases); *Librairie Hachette, S.A. v. Paris Book Center, Inc.*, 62 Misc.2d 873, 309 N.Y.S.2d 701, 704 (S.Ct.N.Y.Co.1970); *Perutz v. Bohemian Discount Bank in Liquidation*, 279 A.D. 386, 110 N.Y.S.2d 446, 451 (1st Dep't 1952), *rev'd on other grounds*, 304 N.Y. 533, 110 N.E.2d 6 (1953). *See* S. Williston, 11 *Contracts* § 1410A, at 607 & n. 2.

**14.** Plaintiff's memorandum in support of his motion to strike affirmative defenses and counterclaims, at 7.

**15.** *See Hicks v. Guinness*, 269 U.S. 71, 80, 46 S.Ct. 46, 47, 70 L.Ed. 168 (1925); *Hoppe v. Russo-Asiatic Bank*, 235 N.Y. 37, 39, 138 N.E. 497 (1923); *Parker v. Hoppe*, 257 N.Y. 333, 339 40, 178 N.E. 550 (1931); *DeSayve v. de la Valdene*, 124 N.Y.S.2d 143, 154 (S.Ct.1953), *aff'd mem.* 283 A.D. 918, 130 N.Y.S.2d 865 (1st Dep't 1954) (citing cases). For cases applying the judgment date rule, see *Conte v. Flota Mercante del Estado*, 277 F.2d 664, 670 (2d Cir. 1960); *Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 954 & n. 5 (2d Cir. 1951) (citing cases). Both of these cases involved the application of foreign law by a federal court; both stemmed from injuries occurring in foreign waters. *Cf. Deutsche Bank v. Humphrey*, 272 U.S. 517, 519, 47 S.Ct. 166, 167, 71 L.Ed. 383 (1926).

incurred by the dollar's decline is if his compensation in Belgian francs were converted to dollars at the rates effective *after* the decline, e. g., at the time of judgment.[16] But he acknowledges, correctly, that the cases uniformly reject that result.

Apart from the fact that Meinrath's argument directly supports Singer's contention, Meinrath cites no authority holding that currency devaluation is a proper item of damage in a contract dispute. We know of none either. To allow him to recover such damages would be no different than allowing successful plaintiffs routinely to increase damage awards to compensate for inflation—a result that we cannot endorse. Meinrath's claim for devaluation damages is dismissed.

## II.

### Plaintiff's Motion

#### A. To Strike Affirmative Defenses

The plaintiff has moved, in blunderbuss fashion, to strike all eight affirmative defenses asserted by Singer in its amended complaint. The applicable standard of law, which plaintiff's memorandum neither discusses nor even mentions, is strict indeed. A motion to strike may be granted only when it is "clearly apparent" on the face of the pleadings that the defense asserted is insufficient as a matter of law.[17] As one court has stated:

It is clear, that if there are either questions of fact or disputed questions of law, the motion must be denied. For the plaintiff to succeed on this motion, the Court must be convinced that there are no questions of fact, that any questions of

law are clear and not in dispute, and that under no set of circumstances could the defenses succeed. In examining the defenses, the Court must accept the matters well pleaded as true and should not consider matters contained outside the pleadings. These narrow standards are designed to provide a party the opportunity to *prove* his allegations if there is the possibility that his defense or defenses may succeed after a full hearing on the merits.[18]

Moreover, even where a defense is insufficient, it will be stricken only if it bears no relationship to the litigation, is prejudicial to the movant, or would confuse the jury if allowed to remain in the answer.[19] In the instant case, there are no allegations of confusion, immateriality, or of prejudice. At most, some of the defenses asserted are surplusage, or denials of plaintiff's allegations which are not grounds justifying their dismissal.

However, one defense, the third, concerns Meinrath's claims for consequential damages and another, the fifth, concerns dollar devaluation losses. In light of the Court's disposition of Singer's motion, they are rendered moot. Moreover, the second affirmative defense—that Meinrath failed to join the Unicard companies, which are alleged to be indispensable parties—is also rendered moot by the disposition of the consequential damages claim. In its decision of January 10, 1980, the Court limited Meinrath's claim to personal damages, suffered by him rather than by his companies. The sole reason that Singer thereafter asserted its second defense was to counter Meinrath's assertion

---

16. *Cf. Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 955 & n. 9 (2d Cir. 1951) (applying judgment-date rule where obligation was to pay in foreign currency, although acknowledging that this is not the rule in New York).

Apparently, plaintiff fails to perceive that application of the breach-date rule would benefit him only if the value of the *franc* had fallen as against the dollar. In fact, the opposite has occurred. *See Librairie Hachette, S.A. v. Paris Book Center, Inc.*, 62 Misc.2d 873, 309 N.Y.S.2d 701, 704 (S.Ct.1970).

17. *Wellman v. Dickinson*, 79 F.R.D. 341, 349 (S.D.N.Y.1978) (citing cases); *Budget Dress Corp. v. Int'l Ladies' Garment Workers' Union*, 25 F.R.D. 506, 508 (S.D.N.Y.1959).

18. *Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*, 47 F.R.D. 366, 368 (S.D.N.Y.1969) (footnotes omitted) (emphasis in original).

19. *See, e. g., Goldberg v. Amalgamated Local Union No. 355*, 202 F.Supp. 844, 846 (E.D.N.Y. 1962); *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 121 (D.P.R.1972) (citing cases).

that one of his companies, Unicard Belgique, had suffered consequential damages in the amount of $122,000. The dismissal of that claim renders the second affirmative defense moot. Since the foregoing three affirmative defenses have been sustained as a matter of law, they are surplusage and there is no reason to further encumber the trial. Accordingly, the second, third and fifth affirmative defenses are stricken.

■ The only other substantial issue raised by the plaintiff's motion concerns the sixth and eighth affirmative defenses, in which Singer alleges that Meinrath failed adequately to perform his employment duties, was terminated for cause, and thereby forfeited his right to bonus compensation. The employment agreement required Meinrath to "devote his full business time and attention . . . to the business of Singer" and "faithfully, diligently and to the best of his ability [to] serve and endeavor to further the interests of Singer. . . ." Furthermore, it provided that Singer could discharge Meinrath "for cause (including without limitation any material breach of their employment agreement)"; and that once terminated, Meinrath would lose all right to bonus compensation for orders thereafter booked. A sine qua non of Meinrath's right to recovery is proof that he duly complied with all the terms and conditions of the Agreement to be performed by him except as it may be alleged he was prevented from so doing by the acts and conduct of the defendant. Parts of the sixth and eighth affirmative defenses put in issue plaintiff's claim of due performance which to be sure could also have been raised by a simple denial of due performance on plaintiff's part. Fairly read, the sixth and eighth defenses affirmatively allege that Meinrath's employment was terminated for cause and that he thereby forfeited his right to compensation. Thus plaintiff's claim of due performance, defendant's denial thereof, and defendant's affirmative claim of wrongful conduct by Meinrath thereby effecting a forfeiture of his right to bonus compensation are interrelated and there is no harm or prejudice in allowing those affirmative defenses to stand.

Meinrath raises a further claim that these two defenses are barred by the doctrine of *res judicata* in that the issue of his discharge had already been litigated in Belgium before the present action was commenced. This claim can only be decided by reviewing the circumstances surrounding Meinrath's dismissal, which are largely undisputed. On June 18, 1974 Meinrath filed a complaint in the Belgian Commercial Court in which he alleged that Singer had wrongfully withheld bonus compensation payments due under the contract. Three days later he was terminated by Singer. In the letter of termination, Singer's representative detailed allegedly improper conduct by Meinrath upon which the decision to discharge him was grounded. This included Meinrath's alleged falsehoods, his public criticism of the company, and his baseless allegations of company misconduct.

At the time of his termination, Meinrath had worked 9½ months for Singer. The contract provides for a minimum period of fifteen months of employment, unless Meinrath was terminated for any of several specified reasons, including "for cause." Moreover, he was entitled to receive notice three months before termination.

Immediately upon receiving notice of his termination for cause and while the action for bonus compensation was still pending in the Belgian *Commercial* Court, Meinrath brought suit in the Belgian *Labor* Court to recover lost salary on the claim that he was wrongfully discharged by Singer. The Labor Court concluded that the commencement, "wrongfully or rightfully," by Meinrath of his action in the Commercial Court did not constitute "serious grounds" for discharge so as to debar him from suing to recover for "lost salary." Accordingly, in its decision of September 26, 1977, that court awarded Meinrath remuneration for an additional 8½ months of salary. This represents salary for the unpaid portion of the minimum period Meinrath would have been entitled to work had he been terminated without cause but with appropriate notice (15 months plus three months for no-

tice). Subsequently, the Commercial Court dismissed Meinrath's action for bonus compensation for lack of jurisdiction over the defendant company.

 Meinrath claims that the Belgian Labor Court decision has *res judicata* effect with respect to the validity of his discharge, and that Singer is estopped from relitigating the cause of Meinrath's termination. The parties agree on the applicable legal standard: Singer concedes that matters finally decided by the Belgian Labor Court are entitled to recognition by this Court and may not be relitigated. Moreover, a party that failed to present relevant arguments or issues to the appropriate tribunal may not thereafter be relieved of its judgment on the ground that it failed to decide specific issues that could have been presented.[20] The parties differ only in their interpretation of the Labor Court's opinion.

 A close reading of that opinion, however, leaves no doubt that the Belgian Labor Court decision rested on the narrowest of grounds already noted: that Meinrath's having brought an action in the Commercial Court did not constitute "serious grounds" for discharge under the applicable Belgian statute. The Court deliberately left unanswered the underlying question of whether Singer had "cause (including without limitation any material breach of the employment agreement)" to terminate Meinrath under the contract. The basic issue of his actual performance under the Agreement was not resolved, despite the fact that both sides requested a ruling on that question. The Labor Court held only that the

event immediately precipitating Meinrath's dismissal—the filing of a complaint against Singer in the Commercial Court—did not constitute "serious cause" (*motif grave*) within the meaning of applicable Belgian law, and thus, that Meinrath could not be dismissed for *that* reason. It expressly declined to rule whether the other reasons advanced by Singer in its termination letter would have justified Meinrath's discharge under controlling New York law, or whether Meinrath had complied with the material provisions of the contract.[21] It held that these issues should be litigated in the Commercial Court, which as noted, ultimately dismissed Meinrath's complaint for lack of jurisdiction over Singer, and so the issues remained unresolved. Thereafter, Meinrath brought the same complaint in this Court. In sum, the issue of Meinrath's performance or lack thereof under the contract remains open. Thus, Singer's affirmative defenses alleging material breaches cannot be stricken.

The other defenses need not be examined individually. They raise obvious issues of fact to be resolved at trial. The plaintiff's motion to strike the first, fourth, sixth, seventh and eighth affirmative defenses is denied.

B. *For Summary Judgment on the Counterclaims*

 In its first counterclaim, Singer alleges that it is entitled to the return of any bonus compensation payments not made in strict accordance with the terms of

---

20. *See, e. g., Heiser v. Woodruff*, 327 U.S. 726, 735 36, 66 S.Ct. 853, 857 -858, 90 L.Ed. 970 (1946) (citing cases); *Chicot County, Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); *Hilton v. Guyot*, 159 U.S. 113, 202–03, 16 S.Ct. 139, 158-159, 40 L.Ed. 95 (1895); *Schuylkill Fuel Corp. v. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456 (1929); *Wille v. Maier*, 256 N.Y. 465, 470, 176 N.E. 841 (1931).

21. The Labor Court stated:

That Mr. MEINRATH brought an action, wrongfully or rightfully, before the Court of Commerce can obviously not constitute serious grounds. Mr. MEINRATH has the right

to determine the grounds of his summons and complaint. If the defendant is of the opinion that they are erroneous or even insulting it is up to [it] to allege its arguments before the competent court.

. . . . .

The summoning before the Court of Commerce and the grounds ·of the summons not constituting serious grounds, the other older grounds contained in the letter of termination need not be examined. They furthermore form a unit with the main complaint.

Judgment of September 26, 1977, Tribunal du Travail de Bruxelles, No. 77/12932, slip op. at 13 [plaintiff's translation: Exh. 12].

the Agreement; that is, any excess payments mistakenly made. Naturally, Meinrath disputes that any such payments were made. The first counterclaim raises factual issues addressed to the heart of Meinrath's main claim; obviously, it cannot be decided on a motion for summary judgment.

In its second counterclaim, Singer seeks to recover from Meinrath $3,597.57 for goods sold by Cogar to Unicard France pursuant to an invoice dated November 6, 1973. Singer asserts that it and Meinrath are the proper parties to this claim, in that Cogar assigned the claim to Singer, and Meinrath agreed "to indemnify [Unicard France] and hold [Unicard France] harmless in respect of any claims made against [Unicard France] by Singer." Singer further alleges that ancillary jurisdiction exists in that its counterclaim is compulsory under Rule 13(a).

Rule 13(a) defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." In determining whether the claim and counterclaim arise out of the same "transaction or occurrence," courts in this Circuit are required to assess whether there is a "logical relationship"[22] between the claim and the counterclaim. Although precise identity of issues and evidence between the two claims is not

required, their "thrust"[23] must be similar, or the counterclaim will be deemed permissive. In applying this test, the Court may consider whether the two claims are "'inextricably intertwined,'" so that a party's success on one renders the other moot;[24] whether separating them would result in "fragmentation of [the] litigation and multiplicity of suits"[25] and whether it is fair to preclude a defendant that failed to counterclaim from asserting its claim in a separate action in another forum.[26]

Upon consideration of all of these factors, the Court concludes that Singer's second counterclaim is not compulsory within the meaning of Rule 13(a). Although it arose during the pendency of the employment agreement, and involves some of the same factual matters as Meinrath's main claim, it is entirely distinct and separable from the main claim. Singer's counterclaim is for failure to make payments on goods received by a foreign corporation whose assets have already been liquidated in bankruptcy. Although Unicard France was a party to the Agreement, there is no allegation that the counterclaim arises out of the Agreement or is connected with it, or that the counterclaim depends for its success on a construction of the Agreement's terms. Certainly it stands or falls on its own merits, regardless of the outcome of the main claim. Moreover, considerations of fairness would not preclude Singer from asserting the claim by itself in a separate action.

22. *See Harris v. Steinem*, 571 F.2d 119, 123 & n. 13 (2d Cir. 1978) (citing cases); *United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1081 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *United Artists Corp. v. Masterpiece Productions*, 221 F.2d 213, 216 (2d Cir. 1955); *Lesnik v. Public Industrials Corp.*, 144 F.2d 968, 975 (2d Cir. 1944). *See also Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.")

23. *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978) (quoting *Ball v. Connecticut Bank & Trust Co.*, 404 F.Supp. 1, 4 (D.Conn.1975)).

24. *See Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1071 (2d Cir. 1977) (citation omitted), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). *See Koufakis v. Carvel*, 425 F.2d 892, 899 (2d Cir. 1970).

25. *United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1082 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). *See id.* at 1081; *United Artists Corp. v. Masterpiece Productions*, 221 F.2d 213, 216 (2d Cir. 1955). *Cf. Southern Const. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962).

26. *See United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1087 (2d Cir. 1970) (Friendly, J., concurring), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

Although Rule 13 should be broadly interpreted to avoid fragmentation of litigation and multiplicity of suits,[27] there is a concomitant danger that joinder of disparate claims into a single action will complicate the issues or confuse the jury. In the instant case the entire course of the parties' pre-trial motion practice has been to winnow plaintiff's cause of action to a single claim, for bonus compensation due him, rather than his companies, under the employment agreement. The counterclaim injects into the litigation a separate dispute, involving different (and now defunct) parties, engaged in a transaction unrelated to Singer's contractual obligation to provide bonus compensation. Because it does not arise out of the same "transaction or occurrence" as the main claim, the counterclaim is permissive rather than compulsory. As such, it must rest upon independent federal jurisdictional grounds.[28] In this case, the second counterclaim clearly fails to allege the requisite jurisdictional amount.[29] Accordingly, it is dismissed.[30]

So ordered.

---

27. *See* note 25 *supra.*

28. *Federman v. Empire Fire & Marine Ins. Co.,* 597 F.2d 798, 812 13 (2d Cir. 1979); *Newburger, Loeb, & Co., Inc. v. Gross,* 563 F.2d 1057, 1070 71 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1080 (2d Cir. 1970) (citing cases), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

29. Because the counterclaim is not within the Court's ancillary jurisdiction, it must be predicated upon the diversity statute, which requires as a jurisdictional minimum an allegation of $10,000 in damages. *See* 28 U.S.C. § 1332(a)(2) & (c).

30. Even if permissive counterclaims could be heard within the Court's ancillary jurisdiction, *see United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1088 89 (2d Cir. 1979) (Friendly, J., concurring) (minority view), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971), in the exercise of discretion, we would decline to assume jurisdiction over the second counterclaim for the reasons already advanced. *See Harris v. Steinem,* 571 F.2d 119, 122–23, 125 n. 18 (2d Cir. 1978); *cf. United Mine Workers v. Gibbs,* 383 U.S. 715, 726 29, 86 S.Ct. 1130, 1139 1141, 16 L.Ed.2d 218 (1966).