NEWMONT MINES LIMITED and Esso Resources Canada Limited, Plaintiffs,

v.

ADRIATIC INSURANCE COMPANY, the Hanover Insurance Company, Utica Mutual Insurance Company, and Allendale Mutual Insurance Company, Defendants.

No. 80 Civ. 1197 (JES).

United States District Court,
S.D. New York.

May 23, 1985.

Skadden, Arps, Slate, Meagher & Flom, New York City (William P. Frank, Thomas Lahiff, New York City, of counsel), for plaintiff Newmont Mines Ltd.

Sullivan & Cromwell, New York City (Michael A. Cooper, William M. Dallas, Jr., William L. Farris, New York City, of counsel), for plaintiff Esso Resources Canada Ltd.

Rein, Mound & Cotton, New York City (Arthur N. Brook, John Mezzacappa, New York City, of counsel), for defendants Hanover Ins. Co. and Utica Mut. Ins. Co.

OPINION & ORDER

SPRIZZO, District Judge:

Plaintiffs, Newmont Mines Ltd. ("Newmont") and Esso Resources Canada Ltd.

("Esso"), sued defendants, The Hanover Insurance Co. ("Hanover"), Utica Mutual Insurance Co. ("Utica"), Adriatic Insurance Co., and Allendale Mutual Insurance Co., for payment under defendants' insurance policies.[1] The action involves the collapse of two sections of the roof of the Granduc concentrator mill building in British Columbia, Canada, which were caused by the accumulation of snow and ice on the roof. After trial, the jury found that the collapse of the two sections constituted two separate insured occurrences, upon which plaintiffs were entitled to recover 2,000,000 in Canadian dollars under the policy of defendant Utica and 500,000 in Canadian dollars under that of defendant Hanover.

Hanover and Utica moved pursuant to Fed.R.Civ.P. 50 and 59 for judgment notwithstanding the verdict or, in the alternative, to set aside the verdict as against the weight of the evidence. They argued that (1) the evidence adduced at trial demonstrated that there had been only one insurable occurrence under the terms of the policies; (2) the fact that plaintiff Newmont abandoned operation of the concentrator and turned off the heat in June 1978 constituted a material change in the risk which voided coverage; and (3) Hanover and Utica did not waive notification of any material change in risk. On the assumption that their motions were denied, defendants argued in the alternative that plaintiffs were entitled to pre-judgment interest from February 20, 1980[2] at the rate provided by New York law.

At oral argument on the motions, held on December 7, 1984, the Court denied defendants' motion to set aside the jury verdict, and concluded that the evidence was not insufficient as a matter of law to support the jury's findings. See, e.g., Mallis v. Bankers Trust Co., 717 F.2d 683, 688–89 (2d Cir.1983); Mattivi v. South African Marine Corp., 618 F.2d 163, 168 (2d Cir. 1980). The Court also refused to set aside

the jury verdict as against the weight of the evidence and to order a new trial, because the evidence did not weigh so heavily in defendants' favor that the verdict could properly be regarded as seriously erroneous or a miscarriage of justice. See, e.g., Mallis, supra, 717 F.2d at 691; Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir.1978).

With respect to pre-judgment interest, the Court found that British Columbia law applied, both as to availability of pre-judgment interest and as to rate, because that law governed the substantive rights of the parties. See, e.g., Entron, Inc. v. Affiliated FM Insurance Co., 749 F.2d 127, 131 (2d Cir.1984), aff'g, 578 F.Supp. 334 (E.D.N.Y.1984); Patch v. Stanley Works (Stanley Chemical Co. Division), 448 F.2d 483, 494 n. 18 (2d Cir.1971) (dictum); Cain v. Trans World Airlines, Inc., 549 F.Supp. 963, 971 (S.D.N.Y.1982); cf. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The law of British Columbia provides for pre-judgment interest from the date the cause of action arose to the date of the court's order, at the rate prescribed by the Registrar of the Supreme Court. See, e.g., Court Order Interest Act, R.S. B.C., c. 76, § 1(1) (1979); Harris v. Insurance Corp. of British Columbia, 48 B.C. L.R. 270, 272 (B.C.Sup.Ct.1983); Brooks v. Karapidakis, 35 B.C.L.R. 287, 289 (B.C. Sup.Ct.1982). The Court therefore ruled that pre-judgment interest would be awarded accordingly.

■ The insurance policies at issue herein, and the jury's verdict based thereon, provide for payment in Canadian dollars. This Court's judgment, however, must be expressed in United States dollars. See, e.g., Shaw, Savill, Albion & Co. v. The Fredericksburg, 189 F.2d 952, 954 (2d Cir. 1951); Meinrath v. The Singer Co., 87 F.R.D. 422, 428 (S.D.N.Y.1980). Therefore, the Court must determine the appropriate

---

**1.** Defendants Adriatic Insurance Co. and Allendale Mutual Insurance Co. settled with plaintiffs prior to trial.

**2.** The parties agree that if liable, defendants' obligation to pay arose on February 20, 1980, thirty days after Newmont submitted proof of loss, as provided in the policies.

date for conversion of the jury's award into United States dollars.

Plaintiffs argue that New York law governs conversion, citing, *inter alia, Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d 854 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). New York adheres to the breach-day rule, applying the rate of currency exchange applicable on the date of breach. *See, e.g., Parker v. Hoppe,* 257 N.Y. 333, 340–41, 178 N.E. 550, 551–52 (1931); *Hoppe v. Russo-Asiatic Bank,* 235 N.Y. 37, 39, 138 N.E. 497, 498 (1923). Defendants contend that British Columbia law governs, and requires application of the rate of exchange in effect on the date of judgment. However, the Court need not decide the choice of law issue, because both New York and British Columbia law would require application of the breach-day rule in this case.

Canadian law requires that all judgments rendered by Canadian courts be expressed in Canadian currency. *See* Section 11, Currency and Exchange Act, R.S.C.1970, c. C–39. In original actions, the Supreme Court of Canada adheres to the breach-day rule for converting obligations in foreign currency to Canadian dollars. *See, e.g., Gatineau Power Co. v. Crown Life Insurance Co.,* [1945] S.C.R. 655, 658 (Can.); *The Custodian v. Blucher,* [1927] S.C.R. 420, 427 (Can.). The Supreme Court of British Columbia has almost universally followed that rule. *See, e.g., Am-Pac Forest Products Inc. v. Phoenix Doors Ltd.,* 14 B.C.L.R. 63, 66–67 (B.C.Sup.Ct.1979); *Sedam v. Whitehead,* No. C791517, slip op. at 8–10 (B.C. Sup.Ct. Jan. 21, 1981); *Canadian Imperial Bank of Commerce v. Singh,* No. C775814, slip op. at 1 (B.C.Sup.Ct. June 3, 1980). *See also Williams & Glyn's Bank Ltd. v. Belkin Packaging Ltd.,* 28 B.C.L.R. 96, 115–16 (B.C.Ct.App.1981) (Hutcheon, J., dissenting); *Agrex S.A. v. Canadian Dairy Commission,* 24 B.L.R. 206, 239 (Fed.Ct.Can. 1984).

While it is true that courts of other Canadian provinces have applied the judgment-day rule, those cases for the most part involved suits on a foreign judgment. *See, e.g., Batavia Times Publishing Co. v. Davis,* 88 D.L.R.3d 144, 154 (H.Ct.Ont.1978). Indeed, the court in *Batavia Times* expressly distinguished the case from *Custodian, supra,* and *Gatineau, supra,* because those were original actions and not subsequent suits on a foreign judgment. *See* 88 D.L.R.3d at 153; *see also Williams & Glyn's, supra,* 28 B.C.L.R. at 115 (Hutcheon, J., dissenting). Moreover, the court adopted the judgment-day rule in *Batavia Times* so that plaintiff would not suffer due to currency fluctuations. *Id.* at 152. Here the opposite is true. Canadian currency has depreciated as against United States currency since the date of breach, and therefore plaintiffs would recover less under the judgment-day conversion rule. Thus the effect of applying a judgment-day rule would be to allow the defendants to benefit from their failure to timely pay their debt.[3]

The Court rejects defendants' argument that the case of *Williams & Glyn's Bank Ltd. v. Belkin Packaging Ltd.,* 18 B.C.L.R. 279 (B.C.Sup.Ct.1979), *rev'd on other grounds,* 28 B.C.L.R. 96 (B.C.Ct.App.1981), *aff'd,* 147 D.L.R.3d 577 (Can.1983), is controlling and mandates application of the judgment-day rule. In that case, the Supreme Court of British Columbia did apply the judgment-day conversion rule in an original action. The Supreme Court failed, however, to even consider its earlier decision in *Am-Pac, supra,* and cited *Batavia Times, supra,* as authority for rejecting the breach-day rule, without noting that that case had been a suit to enforce a foreign judgment—the very basis upon which the *Batavia Times* court distinguished its holding from the breach-day rule cases.

The majority opinions of the two appellate courts which reversed the court on

---

**3.** Such a result would be inconsistent with the most current consensus of opinion in this area, which maintains that a debtor should not bene-

fit by his failure to timely pay his debt. *Cf.* Proposed Restatement of Foreign Relations Law § 823 (April 12, 1985).

other grounds in the *Williams & Glyn's* case did not reach the conversion issue. However, the dissenting judge on the Court of Appeals, who did address that issue, noted the distinction upon which the *Batavia Times* holding rested and stated that, contrary to the court's ruling, the breach-day rule should apply, *citing Am-Pac. See Williams & Glyn's,* 28 B.C.L.R. at 115–16.[4]

Defendants have cited no other British Columbia cases to support their argument. They contend, instead, that the Supreme Court of Canada would probably adopt the judgment-day rule if presented with the issue, because in *Miliangos v. George Frank (Textiles) Ltd.,* [1976] A.C. 443 (H.L.(E.)), the British House of Lords abandoned the breach-day rule, and adopted the judgment-day rule in original actions.

■ ▪ There is, however, no present basis to believe that the Supreme Court of Canada will follow the British rule. The Supreme Court of British Columbia in *Am-Pac, supra,* decided subsequent to *Miliangos,* continued to adhere to the breach-day rule in original actions notwithstanding the change in British law. *See* 14 B.C.L.R. at 67. *See also Sedam, supra,* No. C7981517, slip op. at 9–10; *Canadian Imperial Bank, supra,* No. C775814, slip op. at 9–10; *cf. Agrex, supra,* 24 B.L.R. at 239. Therefore, the Court holds that the breach-day rule governs in this action.[5] It follows that this Court must enter judgment for plaintiffs in the amount of 2,500,000 Canadian dollars, converted into United States dollars at the rate effective on February 20, 1980.[6]

The parties shall submit an appropriate judgment.

It is SO ORDERED.

---

4. After *Williams & Glyn's,* the Supreme Court of British Columbia has noted the distinction between original actions and suits on foreign judgments in refusing to apply the judgment-day rule in an original suit. *See, e.g., Sedam, supra,* No. C791517, slip op. at 10.

5. It is also significant that *Miliangos, supra,* reflects the fact that an English judgment may either be expressed in a foreign currency or converted into pounds sterling at the date of payment. This option is not available under Canadian law which, as noted above, requires all judgments to be stated in Canadian currency. *See* Section 11, Currency and Exchange Act, R.S.C.1970, c. C–39; *see also Williams & Glyn's,*

*supra,* 28 B.C.L.R. at 116 (Hutcheon, J., dissenting); *Batavia Times, supra,* 88 D.L.R.3d at 153–54.

6. It should also be noted that, although the Court need not reach the issue, were this diversity case pending in the courts of New York state, it appears that the New York court would apply the breach-day rule of converting foreign currency into United States dollars even in a case where on the facts presented a New York court would apply foreign law to determine the substantive rights of the parties. *See, e.g., Parker v. Hoppe,* 257 N.Y. 333, 178 N.E. 550 (1931); *Taubenfeld v. Taubenfeld,* 198 Misc. 108, 97 N.Y. S.2d 158 (Sup.Ct.1950).