## ABE STEINBRECHER *v.* THE FAIRFIELD COUNTY TRUST COMPANY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 1-662-11344

Argued September 30—decided November 22, 1968

*Sidney Vogel* and *Abraham B. Beiser,* both of Norwalk, for the appellant (plaintiff).

*Lawrence P. Dennin, Jr.,* of Norwalk, with whom, on the brief, was *Harry H. Hefferan, Jr.,* of Norwalk, for the appellee (defendant).

KOSICKI, J.  By a complaint dated February 7, 1966, the plaintiff brought action against the defendant to recover a total of $3000 on five checks of $600 each drawn by the maker against its checking account in the defendant.  Four of the checks were

returned dishonored and unpaid. A demurrer to the complaint was sustained on the ground, directed to a claim of law asserted in the complaint, that the defendant was not a quasi receiver of the funds of the drawer and the checks did not constitute an "equitable assignment pro tanto of a special fund." The court, *Stapleton, J.*, relied, in its decision, on our Uniform Commercial Code, which, in General Statutes § 42a-4-402, provides that a payor bank is liable only to its customers for damages proximately caused by the wrongful dishonor of an item. A customer has been defined as a depositor and not the payee. "[T]he certification or acceptance of the check[s] by the defendant was essential to liability. The failure to allege either of these facts in the complaint rendered it fatally defective . . . ." *Leary* v. *Citizens & Manufacturers National Bank,* 128 Conn. 475, 479.

The defendant then moved for judgment because of the failure of the plaintiff to plead further, and thereupon the plaintiff filed a substituted complaint in which, in addition to the claims originally made, he alleged that as to each check the funds of the maker, Fairport Rambler, Inc., had been "equitably assigned" to the plaintiff with full knowledge and consent to such assignment by the defendant.

The finding of facts, with such corrections as were made by the trial court, discloses the following situation. The plaintiff is the payee of five checks, each in the amount of $600. The drawer of all five checks was Fairport Rambler, Inc., hereinafter called Fairport, an automobile dealer which had gone out of business before the commencement of the present action. The plaintiff was engaged in the sale of automobiles at wholesale and had been involved in a series of business transactions with Fairport. Prior to receiving the checks sued on, the plaintiff had made a loan to Fairport and received the five

postdated checks, each for $600, drawn on Fairport's regular checking account at the defendant bank. The checks were postdated in five successive monthly intervals from June 10, 1965, through October 10, 1965. When the first four checks were presented to the defendant for payment, on their respective due dates, they were dishonored for lack of sufficient funds. The fifth check was never presented for payment because the plaintiff considered that such presentment would be a futile gesture.

Beginning on or about January and February, 1965, the defendant, which had been substantially financing Fairport's business, maintained a close watch on Fairport's activities, owing to Fairport's financial difficulties. This watch included frequent supervisory visits to Fairport's premises by Walter Loiewski, an officer of the defendant. Fairport was heavily indebted to the defendant because of various loans and advances by the defendant, thus making this intensive supervision necessary. To keep Fairport in business and to protect its own loans as well as the interests of other creditors of Fairport, the defendant, with Fairport's consent, set up four special "escrow" accounts in addition to Fairport's regular checking account. These were for the purpose of (1) paying the Connecticut sales tax, (2) paying for parts and services, (3) maintaining a dealer's reserve account, and (4) providing funds for used-car purchases.

The regular checking account was in a constant overdraft status on the dates when the four checks were presented for payment and on the maturity date of the fifth check. The defendant maintained substantially complete control of the four escrow accounts. As to the regular checking account, the signature of one of Fairport's officers was required for the issuance of a check, and the honoring of it was subject to the final approval to the defendant's

officers, because of the constant overdraft in the regular checking account.

The court found, and an examination of the evidence supports the conclusion, that there was no assignment to the plaintiff, either express or implied, of any funds on deposit to cash any of the five checks in suit, nor was there evidence to support an acceptance of any of the checks by the defendant. The defendant had substantial claims against Fairport, in excess of the overdrafts in the regular checking account, including deficiencies due to its floor plan arrangements with Fairport, and, further, because of a loan and security agreement executed between Fairport and the defendant on or about February 16, 1965, giving the defendant substantial lien creditor rights against most of Fairport's assets. At no time between February, 1965, and October, 1965, when Fairport went out of business, were any state or federal proceedings in insolvency, bankruptcy or receivership instituted by or against the company.

The trial court found the issues on the substituted complaint for the defendant and correctly arrived at the following conclusions: (1) On the dates when the first four checks were presented, and on the date of maturity of the fifth check, the funds in the regular checking account were insufficient to honor the checks; (2) there was no assignment, equitable or otherwise, of any funds relative to the checks to the plaintiff, at the time or times involved; (3) the defendant was not obligated to make transfers from the four escrow accounts to the regular checking account in order to honor these five checks; (4) the defendant was merely a depository of Fairport's funds and was not an author, maker or drawer of the five checks; (5) the defendant's failure to pay the checks was not wrongful or illegal; and (6) the defendant, as drawee, or as a depository, was not

liable to the plaintiff, as payee, for the alleged wrongful dishonor of the five checks.

The foregoing finding is not subject to any correction, except as to the one addition made by the trial court, which would be of any advantage to the plaintiff. There was ample evidence to support the subordinate facts found. There is no dispute that Fairport was in financial difficulties early in 1965. On January 22, 1965, the defendant loaned Fairport $33,192.76 on a promissory note payable one month after date. This was reinforced by the loan and security agreement dated February 16, 1965, which covered present and future loans to an aggregate amount of $750,000, together with advances or loans for taxes, levies, insurance, repairs to or maintenance of equipment and inventory as well as all other obligations, direct or indirect, due the defendant, then existing or arising in the future, and all reasonable costs and expenses of collection, including attorneys' fees. By way of collateral, a security interest was granted the defendant in all property of Fairport, including equipment, inventory, business accounts and other like property interests, and future payments on conditional or time sales. On March 5, 1964, a financing statement signed by Fairport and the defendant was filed with the secretary of state pursuant to General Statutes § 42a-9-401, a part of our Uniform Commercial Code, giving the defendant a security interest in all of Fairport's motor vehicles, new and used. On February 17, 1965, a similar instrument was filed giving the defendant a security interest in all of Fairport's assets except motor vehicles. Between the time Fairport fell into financial trouble and September, 1965, the defendant kept Fairport in business even though there was an overdraft in its checking account and it was "out of trust" on its floor-planned cars. This resulted from the fact that Fairport was

not paying the defendant's advance when it sold a car which the bank had financed. See General Statutes § 42a-4-401 (1), which declares the right of a bank to charge customers' accounts even though such charging creates an overdraft.

The plaintiff made a wholesale attack on the facts found by the court and the conclusions reached. He argues, in effect, that the court should have adopted the plaintiff's view of the evidence and the conclusions urged by him. It is well settled that a finding must stand if there is evidence to support it, even though slight, if it is so strong as to induce a reasonable belief in an impartial mind. *Meagher* v. *Colonial Homes Co.,* 109 Conn. 343, 348. Where conflicting evidence is offered, it is the province of the trial court to resolve the conflict and determine the facts. It is not the function of the appellate court to decide the facts. *State* v. *Magoon,* 156 Conn. 328, 333; see Practice Book §§ 628, 985.

The plaintiff expressly admits that the checks in question did not, by themselves, operate as an assignment of funds of Fairport in the defendant, the drawee bank. That, of course, is clear from the wording of General Statutes § 42a-3-409 (1), which reads: "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." See 1 Anderson, Uniform Commercial Code, §§ 3-409:3, 3-409:4; 10 Am. Jur. 2d, Banks, §§ 565, 568. This identical issue was decided in *Leary* v. *Citizens & Mfrs. National Bank,* 128 Conn. 475, 479. Although this decision preceded the adoption by this state of the Uniform Commercial Code in 1959, it was based on a provision of our then Negotiable Instruments Act (Rev. 1930 § 4506) which was essentially the same as our present statute § 42a-3-409 (1). The Supreme Court in the *Leary*

case held the bank not liable because the check did not operate as an assignment of any part of the funds credited to the drawer by the bank and there was no acceptance of the check by the bank. See *Calamita* v. *Tradesmens National Bank*, 135 Conn. 326, 330; *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 22; *In re Middletown Packing Co.*, 199 F. Sup. 657, 661.

The main reliance of the plaintiff's argument is on his claim that special circumstances present in this case made the issuance of the postdated checks an assignment of all the funds in the hands of the defendant to the credit of Fairport and that there were sufficient funds on deposit with the defendant to pay the checks. Without citing any authority for his claim, the plaintiff vigorously asserts that the defendant, by taking the precautionary measures described above, not only to protect its own interest and to assure repayment of its loans but also to keep Fairport in business through the maintenance of specific escrow accounts, was exercising authority under an "equitable assignment" and a virtual dominion over all of Fairport's banking accounts, thus making the defendant liable on the checks held by the plaintiff. This contention overlooks the fact that the arrangement was with the consent of Fairport and that Fairport, not the plaintiff, was the customer of the bank. There was no obligation resting on the defendant to apply for a receivership or to take similar proceedings for the orderly dissolution of Fairport's business. The plaintiff could have taken such steps equally as well.

It should also be noted that the complaint alleges that each of the checks in question was issued on the date appearing on the face of the check. The evidence is to the contrary. All of the checks were given to the plaintiff early in January, 1965, for the future repayment of a present loan. At the time of

issuance, the drawer had full control over the funds and the power of revocation. There is no evidence that the defendant had any knowledge of the checks until the plaintiff started to present them for payment. Thus the undisputed facts do not satisfy the test laid down in the *Leary* case, supra, nor could the defendant possibly be considered the author of the checks because, at the time of their issuance, it exercised no control over Fairport.

It has been the well-settled rule that before a check may operate as an assignment the following conditions must exist: (1) The check must be drawn on a specific fund; (2) there must be an agreement by the bank to pay certain checks with specific funds; and (3) the bank must have knowledge of and agree to the equitable assignment pro tanto of the fund. 10 Am. Jur. 2d, Banks, §§ 566, 568; see such cases as *Dolph* v. *Cross,* 153 Iowa 289, 293; *People's National Bank* v. *Swift,* 134 Tenn. 175, 182. These factors were not present in the case before the court; thus the plaintiff failed to prove that special circumstances caused the checks to operate as an assignment of Fairport's funds to the plaintiff. The further claim that there had been an acceptance of the checks for payment by the bank under § 42a-3-409 (1) has been abandoned by the plaintiff and does not require further consideration.

The plaintiff has failed to prove the other key allegation of his complaint, namely, that there were sufficient funds on deposit with the defendant bank to pay the checks in question. He has failed to point to a single case in any jurisdiction in support of his position. Lacking special circumstances, such as noted above, there is no privity between the holder of the check and the drawee which establishes an obligation on the latter to pay the check or from which an assumption to pay arises. 10 Am. Jur. 2d, Banks, § 568. Moreover, the evidence clearly sus-

tains the court's conclusions that, on the dates the first four of the checks were presented and on the date of maturity of the fifth check, the funds in the regular checking account were insufficient to pay the checks and that the defendant, as drawee or as a depository, was not liable to the plaintiff, as payee, because of the alleged wrongful dishonor of the five checks.

On June 10, 1965, the date on the first check, there was an overdraft in Fairport's business checking account of $15,045.97. In the four escrow accounts, there was a credit balance of $14,225.18. Clearly, on the plaintiff's own theory, there were insufficient funds to honor that check. On July 10, 1965, there was an overdraft in Fairport's business checking account of $15,188.77. In all escrow accounts, there was a credit balance of $17,022.73, but only if the tax escrow account of $4574.97 is included. In addition, Fairport was "out of trust" $18,455.91. On August 10, 1945, the checking account was overdrawn by $21,813.31. The credit in the escrow accounts was $15,137.12. At the same time, Fairport was "out of trust" by $25,221.65, thereby further increasing its overall deficiency by that amount. On September 10, 1965, the checking account was overdrawn in the amount of $12,027. There was a credit in the escrow accounts of $17,577. Fairport, however, was "out of trust" in the amount of $36,142. Thus, even if we assume, without deciding, that the escrow accounts belonged to Fairport, it was still indebted to the defendant in the amount of $30,592.

The force of the plaintiff's contention appears to stem from the assumption that the defendant was under an obligation to transfer funds from the escrow accounts to Fairport's business checking account to cover the plaintiff's checks. The plaintiff has cited no authority for this proposition, and we have been unable to find any. No doubt, so far as

concerned the sales tax escrow, money held therein belonged to the state of Connecticut. In effect, Fairport was an agent for the state in the collection of and accounting for these taxes. General Statutes §§ 12-408, 12-407 (3), 12-420, 12-411 (3); *Second National Bank* v. *Montesi,* 144 Conn. 311, 314.

There is no merit to the plaintiff's claim that his checks were entitled to some priority in payment because of the various earmarked funds in the defendant to which Fairport had legal title. Our Uniform Commercial Code, in General Statutes § 42a-4-303 (2), provides that "items may be accepted, paid, certified or charged to the indicated account of its customer in any order convenient to the bank." The official comment No. 6 to § 4-303 of the Uniform Commercial Code is as follows: "As between one item and another no priority rule is stated, other than the convenience of the bank. This rule is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer's account; the possible methods of receipt; and other difficulties. Further, where the drawer has drawn all the checks, he should have funds available to meet all of them and has no basis for urging one should be paid before another; and the holders have no direct right against the payor bank in any event, unless of course, the bank has accepted, certified or finally paid a particular item, or has become liable for it under Section 4-302 [§ 42a-4-302]. Under subsection (2) the bank obviously has the right to pay items for which it is itself liable ahead of those for which it is not." Thus, if the defendant had paid anyone but the state out of funds in the tax escrow account, the defendant itself would then be liable to the state. With regard to the other escrow accounts, it is not

seriously challenged that under the loan and security agreement of February 16, 1965, the defendant was authorized, without notice and at any time, to debit all or any part of the indebtedness secured by the agreement to any deposit or account maintained by Fairport with the defendant. The defendant also had its own right of setoff, because Fairport was indebted to it in excess of all the funds Fairport had on deposit in the escrow accounts. The defendant had a first lien on those funds, except the tax account, and a right of setoff which it finally exercised in October, 1965.

The trial court correctly concluded that each time the plaintiff presented one of the first four checks for payment there were insufficient funds on deposit and the check was properly dishonored. In addition, the defendant had substantial claims against Fairport, over and above the overdrafts in the regular account, including deficiencies due to its floor plan arrangements with Fairport and the security agreement of February 16, 1965, giving the defendant substantial lien creditor rights against most of Fairport's assets. This finding of the trial court was unchallenged by the plaintiff. As to the check of October 10, it was never presented for payment and no liability can be charged against the defendant. Even had it been presented, there would have been no funds from which to pay it, because, previous to that date, the defendant had exercised its right of setoff and had applied any funds of Fairport and Fairport's deposits with the defendant against Fairport's indebtedness. These were insufficient to discharge the debt to the defendant; and when Fairport's business terminated a substantial amount of the debt remained unpaid.

There is no error.

In this opinion JACOBS and WISE, Js., concurred.