CASCO BANK & TRUST COMPANY, Plaintiff,

v.

The BANK OF NEW YORK, Defendant.

Civ. No. 82–0012 P.

United States District Court, D. Maine.

April 16, 1984.

David M. Hirshon, Portland, Maine, for plaintiff.

John A. Graustein, Daniel Amory, Portland, Maine, for defendant.

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT TWO AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT TWO

GENE CARTER, District Judge.

On June 1, 1981, the Defendant, The Bank of New York (BNY), certified a $60,000 check drawn by White Plains Hospital Medical Center (Hospital) on its account at BNY payable to the order of Charles and Jean Thornton. On June 8, 1981, BNY stopped payment pursuant to a phone call it received from a representative of the Hospital. The Hospital said that the check had been lost.

On July 16, 1981, the Thorntons endorsed the check and presented it to Casco Bank and Trust Company (Casco). The check had not cleared by the time that Casco issued a "Passbook Plus" account to the Thorntons in the amount of $60,000 in exchange for the check. The check was forwarded through normal banking channels to BNY on July 21, 1981. BNY returned the item unpaid the following day because of the stop payment order and called the Federal Reserve to notify it of the return. The item was forwarded by the Federal Reserve to the First National Bank of Boston (FNB), one of Casco's correspondent banks, which did not return the item to Casco until November 3, 1981.

Between July 16, 1981, and November 20, 1981, the Thorntons withdrew all the funds in their account.

Casco filed suit in this Court on January 14, 1982, seeking damages of $60,000 plus interest, costs, and attorneys' fees in Count I, and compensatory damages of $75,000,

punitive damages of $500,000, interest, costs and fees in Count II.

On October 28, 1983, United States Magistrate D. Brock Hornby recommended to this Court that Casco be found entitled to payment of the check by BNY. This Court adopted the Magistrate's recommendation on November 15, 1983. The issues then remaining in the case were: (1) the amount of damages to be recovered by Plaintiff on Count I, which includes the issue of whether Casco should be awarded compensatory damages based upon Casco's assertion that it is entitled to consequential damages due to BNY's wrongful dishonor; and (2) whether Casco is entitled to punitive damages. After further discovery was completed, Plaintiff filed on March 8, 1984, its Motion for Summary Judgment on Count I of the Complaint seeking an adjudication of damages thereon as a matter of law. On March 18, 1984, the Defendant filed its Motion for Summary Judgment on Count II of the Complaint. We address herein the issues raised by these motions.

Title 11 § 4–102(2) of the Maine Revised Statutes Annotated provides that a bank's liability is governed by the law of the state in which the bank is located. Therefore, the substantive issues of this case are governed by the Uniform Commercial Code (UCC) as adopted in New York. With respect to compensatory and punitive damages the UCC provides that neither may be had unless specifically provided for in the UCC or another rule of law. UCC § 1–106(1). Plaintiff alleges that UCC § 4–402 applies to this case. This section provides that

> [a] payor bank is liable to its *customer* for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a

question of fact to be determined in each case.

UCC § 4–402 (emphasis added). The term "customer" is defined in UCC § 4–104(1)(e) as "any person having an account with a bank for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." It must therefore be determined whether Casco is a customer for purposes of this action.

Casco in this case argues that it is a customer of BNY's for purposes of UCC § 4–402 because Casco maintains a deposit account with BNY's trust department. This account involves a custodial relationship for securities wherein BNY maintains possession of securities owned by Casco and administers the purchase and sale of those securities by Casco. It follows, Casco argues, that its status falls within the meaning of UCC § 4–104(1)(e). BNY argues that the term "customer" involves a plaintiff's status with respect to the particular item in question that was dishonored and not as to a customer status arising out of a relationship unrelated to the item.

A review of the applicable commentaries and case law with respect to UCC § 4–402 reveals that this section's primary purpose is to address problems of wrongful dishonor by a drawee bank of its drawer's check or depositor's demand for withdrawal. The Official Comments Section to UCC § 4–402 use only the terms "drawer" and "drawee" in its discussion of § 4–402. In addition, the only case law that this Court has located or has been referred to by the parties pertains to a relationship between the bank and another party where such relationship arises directly from the item. *See, e.g. Shaw v. Union Bank and Trust Co.*, 640 P.2d 953 (Okl.1981) (bank may be liable in tort to its depositor for wrongful dishonor); *Steinbrecher v. Fairfield County Trust Company*, 255 A.2d 138 (Conn.Cir.1968) (a customer has been defined as a depositor and not a payee); J. White and R. Summers, *Uniform Commercial Code*, 2d ed., § 17–4 (1980) (with case citations). It has also been written that a payee or holder has no cause of action in tort against a

drawee bank even where the item in question was already certified by the drawee bank. A. Bailey, *Brady on Bank Checks*, § 18.9 (1979). This interpretation is not illogical or narrow when one considers that a holder or payee has a cause of action in contract under UCC § 3–410 against a bank that dishonors a certified check.

▉ In this case Casco is not a drawer, depositor or payee with respect to the check. Casco is a holder in due course, the Thorntons are payees, and the Hospital is BNY's customer. Accordingly, since Casco is not a customer, UCC § 4–104(1)(e), it is not entitled to consequential damages for wrongful dishonor under UCC § 4–402.

The scope of Casco's damages in this case is defined by UCC § 4–103(5). This section provides that the measure of damages for a party's failure to exercise ordinary care is the amount of the item unless the plaintiff can show bad faith on the part of the defendant. Under this section, the plaintiff may be entitled to any damages proximately caused, such allegation "to be tested by the ordinary rules applied in comparable cases." UCC § 4–103 Comment 6.

▉ BNY knew when it stopped payment on the check that the check had previously been certified by BNY. Once BNY certified the check, UCC § 3–411, it agreed to "pay the instrument according to its tenor at the time of his (bank's) engagement." UCC § 3–413 (emphasis added).

This Court cannot hold on a motion for summary judgment, therefore, that there is no genuine issue of material fact and that a trier of fact could not infer from BNY's knowledge that it did not act in bad faith. Therefore, Casco should be entitled to prove any consequential damages proximately caused by BNY's conduct. *See* UCC § 4–103(5); Rule 56, Fed.R.Civ.P.[1]

▉ Casco is not entitled to punitive damages under New York law. Punitive damages under New York law are only available for breach of contract to redress a public, as opposed to private, wrong. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). Casco has not demonstrated by any factual predicate in the record that its cause of action for punitive damages is based on a consideration of public policy or that BNY's conduct was morally culpable or motivated by malice. *Garrity, id.* 386 N.Y.S.2d at 833, 353 N.E.2d at 795. Casco attempts to limit the applicability of *Garrity* to this case by asserting that *Garrity* only applies where there is no statute involved and that UCC § 4–402 allows for punitive damages. As this Court has previously found, however, § 4–402 is inapplicable to BNY under these circumstances. Therefore, *Garrity* is controlling in this case. Because Casco is not a customer and therefore UCC § 4–402 is inapplicable and

---

**1.** Plaintiff is not entitled, based upon the circumstances of this case, to consequential damages under New York case law. In *Spang Industries, Inc. v. Aetna Casualty & Surety Co.*, 512 F.2d 365 (2d Cir.1975), the Second Circuit Court of Appeals held that under the rule of *Hadley v. Baxendale*, 156 Eng.Rep. 145 (Ex.1854), if the damages sought were not reasonably anticipated at the time the contract was entered into "then it must be established that the special circumstances giving rise to them should reasonably have been anticipated at the time the contract was made." *Spang*, 512 F.2d at 368 (footnote omitted). In *Meinrath v. Singer Co.*, 87 F.R.D. 422 (S.D.N.Y.1980), the court found that the plaintiff's claim for consequential damages consisting of the value of the decline in investment capital is a claim "for payment withheld although due," *id.* at 426, and that under *Loudon v. Taxing District*, 104 U.S. 771, 26 L.Ed. 923 (1881), such claim was not compensable.

In *Meinrath* the court found that the plaintiff had not proven that the damages suffered had been as a result of special circumstances. "Here the plaintiff's case is not for a unique article, but only for payments withheld although allegedly due. Moreover, the claimed loss was not related to the completion of the contract; instead, it was incurred in other, wholly unrelated ventures." *Id.* at 427. Similarly, in this case the plaintiff's damages were incurred as a result of a transaction unrelated to the certification or acceptance of the stop payment order. BNY could not have reasonably foreseen that Casco would honor a check that had not cleared or continue to allow the Thorntons to draw on their account once Casco had learned of the dishonor of the check. Thus, the loss of the use of the funds by Casco was not reasonably foreseeable by BNY and, therefore, not recoverable. *See Spang.*

*Garrity* controls this case, the Court makes no decision as to whether § 4–402 provides for punitive damages.

BNY asserts that the Maine prejudgment interest statute, 14 M.R.S.A. § 1602 (1979), which provides for interest at 8% per annum, precludes Casco from obtaining a rate of interest greater than 8% in its proof of damage. BNY argues that the prejudgment interest statute was intended by the Maine legislature to provide the appropriate compensation for a plaintiff who suffered delay in obtaining his damages. In addition, BNY states that it would be an undue burden for a court to have to determine what plaintiffs would have earned on their judgment had they had the funds available to them to invest.

 The prejudgment interest statute is not, contrary to BNY's argument, the sole remedy available to Casco. *Batchelder v. Tweedie*, 294 A.2d 443 (Me.1972). Rather, "[t]he intention is to control the conduct of the trial." *Id.* at 445. The *Batchelder* court found that prejudgment interest is not a measure of damages. Therefore, the statute is not a substantive remedy and does not preclude a plaintiff from attempting to show that it has been damaged beyond the 8% interest rate.[2] As in any civil case, the burden of proving both causation and extent of damages is upon the plaintiff. The only burden that is placed upon this Court in *any* case with respect to damages is the burden of trying to sift through a morass of unclear testimony. It is incumbent upon a party seeking damages to present the evidence as concisely as possible. Accordingly, the Court finds that 14 M.R.S.A. § 1602 does not preclude Casco from attempting to prove damages that it suffered as a result of BNY's dishonor of the check. The existence of damage and its causes, however, are genuine issues of material fact that cannot be decided on a motion for summary judgment based upon this record.

For the foregoing reasons, the Court holds that Plaintiff is not entitled to punitive damages and is only entitled to consequential damages to the extent that it can show bad faith on the part of the Defendant.

Accordingly, it is hereby ORDERED that Defendant's Motion for Summary Judgment on Count II with respect to punitive damages be, and is hereby, GRANTED; and that Plaintiff's Motion for Summary Judgment be, and is hereby, DENIED.

So ORDERED.

---

**2.** While the prejudgment interest statute does not preclude a plaintiff from proving damages with respect to interest as a matter of substantive law, Plaintiff must still show that such proof of consequential damage is permitted either by the common law or statute.