[755 NYS2d 367]

Tonia Campbell, Respondent, v Citibank, N.A., Appellant.

First Department, January 28, 2003

**APPEARANCES OF COUNSEL**

*Tracee E. Davis* of counsel (*Mark Zeichner* and *Michael L. Slonim* on the brief; *Zeichner Ellman & Krause LLP,* attorneys), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal, from the denial of a CPLR 3211 motion to dismiss causes of action for wrongful dishonor of a check (Uniform Commercial Code § 4-402) and failure to pay or return the check until after the midnight deadline (Uniform Commercial Code § 4-302 [a]), involves the sufficiency of such claims where, admittedly, the check was deposited on a Friday and the proceeds were credited to the depositor's account on the following Monday, one banking day later.

The complaint alleges that on Friday, May 11, 2001, plaintiff attempted to cash a $17,225 check drawn on a Citibank payroll account at one of Citibank's offices. Informed that Citibank's regulations did not allow cashing a payroll check in excess of $3,000 and that the most expeditious way to obtain access to the check proceeds was to open an account at Citibank, plaintiff, in need of funds because of travel plans, opened a Citibank savings account with a deposit of the payroll check proceeds. Plaintiff alleges that she was assured that she would be able to withdraw funds from the new account the very next day through the ATM system. On the next day, Saturday, May 12, 2001, when plaintiff sought to withdraw from the account at an ATM facility in Washington, D.C., she was informed that she had insufficient funds. The following Monday, May 14, 2001, she was informed by a Citibank customer service supervisor that a "block" had been placed on the account and that release of the funds was "discretionary." Citibank's representatives could offer no further assistance. Later that day, after "approximately three hours of telephone calls" to Citibank offices, plaintiff was given access to her funds.

The complaint further alleges that, as a result of the delay in being given access to the funds, plaintiff could not leave Washington D.C. until the afternoon of May 14, that she returned to work the next day, Tuesday, May 15, "emotionally exhausted and physically ill due to the difficulties with her Citibank account." Plaintiff alleges that she was terminated from her employment on Thursday, May 17 due to her "inability to function and work."

The complaint asserts four causes of action: (1) wrongful dishonor of the check in violation of Uniform Commercial Code § 4-402; (2) failure to exercise ordinary care in violation of Uniform Commercial Code § 4-103; (3) failure to pay or return the check timely in violation of Uniform Commercial Code § 4-302; and (4) breach of contract. The complaint also seeks

attorneys' fees. Citibank, prior to answering the complaint, moved to dismiss the first and third causes of action, arguing that plaintiff failed to state a claim for wrongful dishonor because she was not the drawer of the check, and also because there was no late return of the check since it was paid on the next banking day. In support of the motion, it submitted an affidavit from an assistant vice-president avowing that "Citibank is not open to the public on Saturdays and Sundays for carrying on substantially all of its banking business." Citibank also sought to strike the demand for attorneys' fees on the ground there was no statutory authority therefor.

In opposition, plaintiff argued that her status as a customer of Citibank entitled her to sue for wrongful dishonor and that she should be afforded discovery on whether Saturday constitutes a "banking day." She also urged that the Uniform Commercial Code provided for attorneys' fees where liability is found. The IAS court denied the motion, finding that questions of fact had been raised. The court never addressed the issue of counsel fees. We reverse.

Although we disagree with Citibank's argument that plaintiff cannot sue for wrongful dishonor because she was not the drawer of the check, the cause of action for wrongful dishonor should have been dismissed nonetheless since the check was not dishonored. Under Uniform Commercial Code § 4-402, "[a] payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." "Customer" is defined as "any person having an account with a bank or for whom a bank has agreed to collect items" (Uniform Commercial Code § 4-104 [1] [e]; see MRF Resources v Merchants Bank of N.Y., 89 NY2d 244, 248; see Quistgaard v EAB European Am. Bank & Trust Co., 182 AD2d 510). Thus, contrary to Citibank's argument, the right of action under Uniform Commercial Code § 4-402 is not limited to the drawer but may include a depositor (see Casco Bank & Trust Co. v Bank of N.Y., 584 F Supp 763, 765-766 [D Me]). While clearly a mere payee is not a customer for purposes of Uniform Commercial Code § 4-402 (see Quistgaard, supra), here, plaintiff was not merely a payee; she had opened an account with Citibank in which she deposited the check. Thus, as a customer of Citibank within the meaning of Uniform Commercial Code § 4-402, plaintiff may sue for wrongful dishonor of the check.

While plaintiff may have standing to assert such a claim, she has no case since the allegations of the complaint do not establish that the bank wrongfully dishonored the check (see MRF

*Resources v Merchants Bank of N.Y.*, 89 NY2d at 248). As the complaint admits and the documentary evidence shows, the check was honored on May 14, 2001. That a "block" was placed on the account does not constitute wrongful dishonor within the meaning of Uniform Commercial Code § 4-402 (*id.*). Thus, the cause of action for wrongful dishonor should have been dismissed.

Nor was the check returned late. Uniform Commercial Code § 4-302, in pertinent part, provides, "[I]f an item is presented on and received by a payor bank the bank is accountable for the amount of (a) a demand item * * * whether properly payable or not if the bank * * * regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline." With respect to a bank, section 4-104 (1) (h) of the Code defines "midnight deadline" as "midnight on its next banking day following the banking day on which it receives the relevant item." "Banking day" is defined as "that part of any day on which a bank is open to the public for carrying on substantially all of its banking functions" (Uniform Commercial Code § 4-104 [1] [c]). Here, as plaintiff admits and the documentary evidence establishes, the check was credited to plaintiff's account on Monday, May 14, 2001, following its deposit on Friday, May 11, 2001. As the record shows, Citibank is not open to the public on Saturdays or Sundays "for carrying on substantially all of its banking business."

In finding the existence of a question of fact as to whether the funds were available to plaintiff on Saturday, the IAS court relied on a document submitted by plaintiff entitled, "Funds Availability for Citibank Checking Accounts." As pointed out by Citibank, however, the document applies to a checking, not a savings, account, which was the type of account opened by plaintiff. Moreover, the document expressly states that Saturday and Sunday are not business days, i.e., banking days. While the document does state that the bank would make funds that would become available on Monday available on Saturday as a convenience to the customer, this promise, which may be relevant to plaintiff's still-pending breach of contract claim, does not alter the provisions of the Uniform Commercial Code on the late or untimely return of a check. Indeed, under the Code, "a depositary bank may allow a customer to draw on uncollected funds, that is, checks that have been deposited but not yet paid" (*First Natl. Bank in Harvey v Colonial Bank*, 898 F Supp 1220, 1222 [ND Ill]; *see* Uniform Commercial Code

§ 4-208 [1] [a]). Thus, whether the bank chooses to make uncollected funds available to a customer is separate and distinct from its statutory obligation either to honor or return a check by midnight of the second banking day.

In any event, plaintiff suffered no damages from the alleged late return of the check. Under Uniform Commercial Code § 4-302, a bank that fails to comply with the midnight deadline is "accountable" for the amount of the demand item, i.e., check. Thus, the bank's liability is limited to the face amount of the check (*First Natl. Bank in Harvey v Colonial Bank, supra,* 898 F Supp at 1226-1227; *United States v Loskocinski,* 403 F Supp 75, 79 [ED NY]). Since the documentary evidence shows that Citibank paid and fully credited plaintiff with the full amount of the check, she cannot state a claim for damages for late return of the check.

Finally, it is a well-settled rule in New York that attorneys' fees are considered an incident of litigation and, unless authorized by statute, court rule or written agreement of the parties, are not recoverable (*Hooper Assoc. v AGS Computers,* 74 NY2d 487, 491; *Matter of A.G. Ship Maintenance Corp. v Lezak,* 69 NY2d 1, 5). In the absence of an explicit statutory or contractual authority therefor, a right to attorneys' fees will not be inferred. (*Lawyers' Fund for Client Protection v Morgan Guar. Trust Co. of N.Y.,* 259 AD2d 598, 600.)

Accordingly, the order of the Supreme Court, Bronx County (Douglas McKeon, J.), entered April 30, 2002, denying defendant's motion to dismiss the first and third causes of action, pursuant to CPLR 3211 (a) (1) and (7), and to strike the demand for attorneys' fees, should be reversed, on the law, with costs and disbursements, the motion granted and the demand for attorneys' fees stricken.

Tom, J.P., Andrias, Rosenberger and Gonzalez, JJ., concur.

Order, Supreme Court, Bronx County, entered April 30, 2002, reversed, on the law, with costs and disbursements, the motion to dismiss the first and third causes of action and to strike the demand for attorneys' fees granted.