**Michael B. POLLACK, Plaintiff,**

v.

**Frankie CROCKER, Frankie Crocker Television Productions, Inc., Frankie Crocker Organization, Ltd., and Frankie Crocker Productions, Inc., Defendants.**

**No. 84 Civ. 5225 (SWK).**

United States District Court, S.D. New York.

May 4, 1987.

Murray & Skoff, New York City by Abraham Y. Skoff, for plaintiff.

Karen Shatzkin, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Subject matter jurisdiction in this case is founded on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff alleges breach of contract, repudiation and fraudulent inducement in an attorney/agency agreement with defendants. The case is presently before the Court on defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment in favor of defendants: (1) dismissing the first, second and fifth claims in their entirety, (2) dismissing the demand for consequential damages in the third and fourth claims, and (3) dismissing the tort claim in its entirety, and (4) dismissing the demand for quantum meruit recovery in the seventh claim. Plaintiff has cross-moved for summary judgment in plaintiff's favor on plaintiff's first, second and third claims and, in the amount of $27,000 plus interest, on plaintiff's fourth claim. For the reasons set forth below, defendants' motion is granted in part and denied in part, and plaintiff's cross-motion is granted in part and denied in part.

## FACTS

Plaintiff Michael B. Pollack ("Pollack"), an attorney, initially represented defendant Frankie Crocker ("Crocker"),[1] who is in the

---

1. In addition to Crocker, Pollack also has sued defendants Frankie Crocker Productions, Inc., Frankie Crocker Organization, Ltd., and Frankie Crocker Television Productions, Inc., all of which are corporations organized and existing under the laws of the State of New York and with principal places of business in California

entertainment industry, in 1976 in a criminal matter prosecuted in the United States District Court for the District of New Jersey. Subsequently, the Newark United States Attorney dropped its indictment and, in return, Crocker apparently pled guilty to misdemeanor tax charges in the Southern District of New York. Pollack's representation of Crocker in these matters is not in issue in this litigation.

In 1978, Pollack attempted to negotiate the purchase of a radio station in Crocker's behalf. Pollack alleges that his fee, based on an oral agreement, was to be ten percent of Crocker's equity. Pollack was, however, unable to negotiate this purchase for Crocker.

In the latter part of 1978 and in early 1979, Pollack successfully negotiated an employment contract (the "1979 contract" or the "1979 agreement") for Crocker with the Inner City Broadcasting Corporation ("Inner City"), which operates radio station WBLS–FM in New York. Crocker previously had been employed as a disc jockey and program manager at WBLS, but had been fired in early 1977 during the criminal proceedings in New Jersey. The 1979 contract ran for the period from January 9, 1979 through January 8, 1983. Pollack alleges that his oral ten-percent-of-gross agreement with Crocker also pertained to the 1979 contract and that he had agreed, at Crocker's request, to defer any such fees in light of Crocker's financial condition. Pollack alleges that he has never been paid for these services.

Pollack successfully represented Crocker on a tax refund claim against the Internal Revenue Service (the "IRS") in 1981 through 1984. Pursuant to a written agreement dated April 8, 1981 (the "1981 contract" or the "1981 agreement"), Pollack was to receive twenty-five percent of all sums recovered. Pollack recovered the sum of $312,000 from the IRS and accordingly was to receive $78,000 for his services. Crocker paid Pollack a total of $17,500 before receipt of the IRS payment. In May 1984, Crocker gave Pollack a check in the amount of $59,000, and Pollack released the IRS recovery checks to Crocker. Pollack alleges that Crocker fraudulently stopped payment on the $59,000 check and that it was not paid. Subsequently, Crocker paid Pollack an additional $32,000 still owing under the 1981 contract. Pollack also seeks consequential damages and damages as a result of Crocker's fraud. Crocker concedes that he owes Pollack $27,000 plus interest.

In the latter part of 1982, 1983 and early 1984, Pollack again represented Crocker in negotiating a renewal of Crocker's contract with Inner City—which was to expire on January 8, 1983. Crocker claims to have negotiated an interim agreement under which Crocker operated after expiration of his 1979 contract. In December 1983, while the negotiations were ongoing and Crocker was still employed by Inner City, Pollack and Crocker entered into a written agreement (the "1983 contract" or the "1983 agreement"), drafted by Pollack, which provides in full that:

> WHEREAS, it is the intention of FRANKIE CROCKER, FRANKIE CROCKER PRODUCTIONS, FRANKIE CROCKER ORGANIZATION and the FRANKIE CROCKER TELEVISION PRODUCTION COMPANY, (hereinafter referred to collectively as "CROCKER") to retain the services of Michael B. Pollack, Esq., to represent CROCKER in contract negotiation, and
>
> WHEREAS, it is the intention of the parties that Michael B. Pollack shall be paid for said services at the rate of 5% of the Net amounts received by CROCKER, and
>
> WHEREAS, CROCKER acknowledges that Michael B. Pollack, Esq., negotiated his contract with Inner City Broadcasting beginning January 9, 1979 and terminating January 8, 1983 and has been negotiating a new contract of employment since expiration of the previous contract said compensation is specifically to include compensation at the agreed rate for payments received pursuant to the new contract retroactive to January 9, 198[3].

and New York. The Court refers to the defendants collectively as "Crocker".

IT IS THEREFORE AGREED BY AND BETWEEN the parties that for all past, current and future representation in contractual matters, including, but not limited to, contract negotiations with Inner City Broadcasting and negotiation concerning syndication of the Urban Co[n]temporary Awards Television Show, Michael B. Pollack, Esq., is to be compensated at the rate of 5% of the net revenues received by CROCKER.

Had a renewal contract been consummated, it would have been retroactive to January 9, 1983. However, a renewal contract never was consummated. Crocker was paid by Inner City through June 1984 and was terminated by Inner City at that time.

Pollack claims that, based on this written agreement, he is entitled to five percent of Crocker's earnings for the 18 month period from January 1983 through June 1984. Alternatively, Pollack claims that Crocker repudiated the 1983 contract and that Pollack is therefore entitled to ten percent of Crocker's earnings for this period pursuant to his prior oral agreement with Crocker. Again in the alternative, Pollack claims that he is entitled to the reasonable value of his services on a quantum meruit theory. Pollack also claims that he negotiated various other business agreements and organized various business entities and performance arrangements for which he is entitled to the same rates of compensation. The complaint, however, does not specify these agreements and arrangements.

Finally, Pollack claims that he represented Crocker in a criminal matter in New York County. Pollack alleges that his legal fee for his services in this regard was $10,000 and that Crocker only paid him $5,000. As a result, Pollack claims that Crocker still owes him $5,000 on his representation of Crocker in this matter.

## DISCUSSION

The standards to be applied by a district court in deciding a motion for summary judgment have been clearly articulated in this Circuit. It is axiomatic that a motion for summary judgment lies only when there is no genuine issue of material fact.

Fed.R.Civ.P. 56(c). In considering the motion, this Court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, — U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "special facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are insufficient to raise genuine issues of material fact.

### The First Claim

Pollack's first claim alleges that, as Crocker's agent and attorney, Pollack (1) negotiated the 1979 contract for Crocker with Inner City, (2) attempted to negotiate a renewal contract between Crocker and Inner City, (3) negotiated a temporary agreement between Crocker and Inner City from 1983 through mid–1984, (4) negotiated with Inner City over issues which arose during the performance of the contract and temporary agreement, (5) negotiated various other agreements, and (6) organized business entities and performance arrangements in connection with Crocker's work in the entertainment industry. Pollack contends that he was to be compensated by Crocker consistent with the entertainment industry standard for such work and in the amount of: (1) ten percent of the amounts paid to Crocker for Crocker's services in the entertainment industry during the peri-

od of Pollack's employ, in connection with the agreements with which Pollack was involved pursuant to the oral agreement, and (2) five percent of the net amounts paid to Crocker for Crocker's work at WBLS and other contract negotiations, starting in 1983 pursuant to the 1983 agreement.

Crocker argues that this claim must be dismissed because (1) the 1983 agreement by its very terms controls all of Pollack's contract negotiation services from 1979 on, and (2) as no monies were received under either the unsuccessful Inner City extension contract or the unsuccessful television syndication contract—the two income sources cited in the 1983 contract from which Pollack's five percent commission was to derive—Crocker owes no monies to Pollack for these contract negotiation services.

Pollack argues that, if the 1983 contract controls, then Pollack is entitled to five percent of the net amounts received by Crocker under these various contracts because the 1983 contract is clear on its face and is not limited to compensation only from the unsuccessful Inner City extension contract or the unsuccessful television syndication contract.

Both parties correctly relied on New York law of contracts in support of their respective positions. Under New York law, it is well established that, where parties reach an agreement, they are bound by it, whatever its form and however it is manifested. *Reprosystem, B.V. v. SCM Corporation*, 522 F.Supp. 1257, 1275 (S.D. N.Y.1981) (citing *Kleinschmidt Division of SCM Corp. v. Futuronics Corp.*, 41 N.Y.2d 972, 363 N.E.2d 701, 395 N.Y.S.2d 151 (1977), and *Sanders v. Pottlitzer Bros. Fruit Co.*, 144 N.Y. 209 39 N.E.75 (1894)), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984).

Under New York law, where the parties contemplate memorializing their agreement in a final document, their less formal agreement may take effect, if that is the intent of the parties prior to that event. *Reprosystem*, 522 F.Supp. at 1276. Nonetheless, that formal document becomes the memorialization of that contract, 1A Corbin

*Contracts* § 30 at 99 (2d ed. 1963). This contract is both the memorialization of the parties' past oral agreements and an agreement regarding present and future work.

It is axiomatic that the contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed. *See, e.g., Nidds v. Procidano*, 95 A.D.2d 912, 913, 463 N.Y.S.2d 903, 905 (3d Dep't 1983) (citing *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 19, 172 N.E.2d 280, 282, 210 N.Y.S.2d 516, 518 (1961)); *Prial v. Supreme Court Uniformed Officers Association*, 91 Misc.2d 115, 117, 397 N.Y.S.2d 528, 530 (Sup.Ct.N.Y.Co.1977) (holding an attorney's retainer agreement enforceable against a client). Only where the language of the contract is ambiguous is parol evidence admissible for contract interpretation. *Western Union Telegraph Co. v. American Communications Association, C.I.O.*, 299 N.Y. 177, 184, 86 N.E.2d 162, 166 (1949). Furthermore, the threshold question of whether a writing is ambiguous is "the exclusive province of the Court." *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 435 N.E.2d 1075, 1077, 450 N.Y.S.2d 460, 462 (1982).

Here, the Court finds no ambiguity since the language in the contract is clear, precise and does not form a reasonable basis for a difference of opinion.

The first paragraph of the contract introduces the parties. The second paragraph of the contract unequivocally states that Pollack is to be paid for his services under this contract at the rate of five percent of the net amounts received by Crocker. The third paragraph acknowledges that the compensation contemplated by the contract is specifically to include compensation for the renewal contract which Pollack was then negotiating with Inner City for Crocker and that any compensation under that contract was "retroactive to January 9, 198[3]." Finally, the fourth and final paragraph provides that Crocker and Pollack agree that Pollack is to be compensated at the agreed rate of five percent "for all *past, current* and *future* representation [of Crocker] in contractual matters, *includ-*

*ing, but not limited to,* contract negotiations with Inner City Broadcasting and negotiation concerning syndication of the Urban Co[n]temporary Awards Television Show" (emphasis added).

The clear and unambiguous language of the contract, then, demonstrates that Pollack and Crocker agreed that Pollack was to be paid at the rate of five percent of the net amounts received by Crocker for all past, present and future representation of Crocker in contractual matters, and that summary judgment in favor of Pollack is appropriate as to this issue.

Nonetheless, it is not entirely clear as to precisely which contracts Pollack actually negotiated for Crocker. While it is undisputed that Pollack negotiated the 1979 agreement, whatever other contracts he negotiated are either not specified or disputed by the parties. Furthermore, the parties have not addressed this issue in their motions, and the complaint provides that this issue is to be determined at trial. The Court agrees.

Accordingly, Crocker's motion for summary judgment as to claim one is denied. Pollack's cross-motion for summary judgment is granted as to a five percent rate of compensation for his representation of Pollack in all contract negotiations. The issue of which contracts Pollack actually negotiated, however, is inappropriate for summary judgment and must await trial.

### The Second Claim

■ Pollack's second claim is that Crocker repudiated the 1983 agreement by refusing to make payment under the agreement and that, as a result, the 1983 agreement must be declared void to the extent that it is relied on by Crocker as a basis for limiting Pollack's compensation to five percent of the net amounts received by Crocker under these contracts.

Crocker argues that he did not repudiate, but rather relied on, the 1983 agreement, because he believed that no monies were due under it.

While the facts demonstrate that Crocker breached the 1983 agreement, no facts are presented that he repudiated it. Pollack provides no such facts. Accordingly,

Crocker's motion for summary judgment as to the second claim is granted, and the second claim is hereby dismissed.

### The Third and Fourth Claims

■ Pollack's third claim (based on the 1981 contract) and fourth claim (based on the negotiable instrument) allege that Crocker retained Pollack to represent him on a tax refund claim against the IRS, that Pollack was to receive 25 percent of all sums recovered, that Pollack recovered $312,000 and was to receive $78,000 for his services, that Crocker advanced $17,500 towards Pollack's fee and applied interest to that amount, that Crocker tendered a $59,000 check to Pollack in May 1984, that Crocker stopped payment on the check and it was dishonored, that Crocker subsequently paid Pollack the sum of $32,000, and that therefore the sum of $27,000 remains due and owing. Pollack amended these claims to include an additional claim for $100,000 in consequential damages.

Crocker does not dispute—indeed, he acknowledges—the $27,000 debt owing to Pollack and moves for summary judgment in his favor on the ground that consequential damages are not compensable as a matter of law. Pollack does not contest this assertion but instead cross-moves for summary judgment in his favor on the issue of the $27,000 debt owing to him by Crocker.

More than one hundred years ago the Supreme Court in *Loudon v. Taxing District,* 104 U.S. (14 Otto) 771, 26 L.Ed. 923 (1881), resolved the precise issue now before the Court and in the process formulated a rule which survives today. *Meinrath v. Singer Co.,* 87 F.R.D. 422, 426 (S.D.N.Y. 1980). The Supreme Court limited a plaintiff's relief to recovery of interest at the prevailing legal rate and found a defendant not liable for consequential damages:

> All damages for delay in the payment of money owing upon contract are provided for in the allowance of interest, which is in the nature of damages for withholding money that is due. The law assumes that interest is the measure of all such damages.

*London,* 104 U.S. at 774.

The rule of *Loudon* has been adopted by the New York courts, *Meinrath,* 87 F.R.D.

at 426, and is applicable here. Pollack has not opposed Crocker's motion for summary judgment as to the issue of consequential damages, and this Court's independent search has not revealed any authority that supports an award of damages other than interest where the claim is for payments withheld. *See also Meinrath,* 87 F.R.D. at 427.

Accordingly, Crocker's motion for summary judgment as to the issue of consequential damages is granted, and, because Crocker acknowledges his $27,000 debt to Pollack, Pollack's cross-motion for summary judgment as to Crocker's liability for the $27,000 debt plus interest also is granted.

*The Fifth Claim*

■ In his fifth claim for relief, Pollack claims that, in relation to the 1981 agreement, Crocker fraudulently induced Pollack to deliver the IRS checks to Crocker in exchange for a $59,000 check on which Crocker intended to stop payment, and that Pollack was harmed as a result.

Crocker argues that, because the only fraud in this claim relates to the alleged breach of a contract, it does not give rise to separate tort liability and must be dismissed. Crocker cites *Miller v. Volk & Huxley Inc.,* 44 A.D.2d 810, 355 N.Y.S.2d 605 (1st Dep't 1974), and *Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897 (2d Cir.1980), to support his position.

Pollack contends that his claim must stand as it alleges fraudulent representation which induced him to release an attorney's lien on the $312,000 IRS checks, and that this claim is not based on the alleged breach of contract.

Crocker misapprehends the rules cited in *Miller* and *Hargrave.* As the *Hargrave* court provided,

> The law of torts and the law of contracts are said to protect different interests. A plaintiff may recover in contract because the defendant has made an agreement, and the law thinks it desirable that he be held to that agreement. Tort liability is imposed on the basis of some social policy that disapproves the infliction of a specific kind of harm irrespective of any agreement. Specifically the law of fraud

seeks to protect against injury those who rely to their detriment on the deliberately dishonest statements of another.

> Thus, it does not follow that because acts constitute a breach of contract they cannot also give rise to liability in tort. Where the conduct alleged breaches a legal duty which exists "independent of contractual relations between the parties" a plaintiff may sue in tort. If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract.

*Hargrave,* 636 F.2d at 898–99 (citations omitted).

Here, Pollack sets forth the elements of an action in tort for fraudulent representation: (1) representation of a material existing fact, (2) falsity, (3) scienter, (4) deception, and (5) injury. *Channel Master Corporation v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 407, 151 N.E.2d 833, 835, 176 N.Y.S.2d 259, 262 (1958). Pollack alleges that Crocker knowingly misrepresented that the $59,000 check was good when in reality he intended to stop payment on it. Pollack asserts that he relied on the misrepresentations and released his attorney's lien on the government checks, which would otherwise have been used as security. Pollack claims that, as a result of the bank's dishonor of the $59,000 check, Pollack was unable to meet certain obligations for which the funds promised and owing by Crocker had been earmarked, that Crocker was aware that these monies had been so earmarked, and the Pollack's credit was adversely affected and he was obligated to incur additional costs, penalties, interest and attorneys' fees. These allegations state a claim for fraud, and, if Crocker indeed made the fraudulent representations he "is subject to liability *in tort* whether the agreement is enforceable or not." *Hargrave,* 636 F.2d at 899 (quoting *Channel Master Corporation,* 4 N.Y.2d at

408, 151 N.E.2d at 836, 176 N.Y.S.2d at 263).

Accordingly, Pollack has stated a valid claim for fraud and Crocker's motion for summary judgment dismissing Pollack's fifth claim, as amended, is denied.

*The Seventh Claim*

■ Pollack's seventh claim is for the reasonable value of the services which Pollack rendered to Crocker and for which he has not been compensated. Pollack contends that he should be able to recover on the theory of quantum meruit if the Court holds that there was no meeting of the minds in connection with his fee agreements with Crocker.

Crocker argues that the seventh claim should be substantially dismissed because a claim in equity on quantum meruit lies only where the plaintiff cannot show an express contract with the party he seeks to charge.

To the extent that Pollack's claims are not based on an express contract, he may state valid claims on a quantum meruit theory of recovery. As a result, summary judgment is inappropriate at this time, and the issue must await trial. Accordingly, Crocker's motion for summary judgment as to Pollack's seventh claim is denied.

## CONCLUSIONS

Crocker's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted as to the second claim and as to consequential damages in the third and fourth claims, and is denied as to the first, fifth and seventh claims. Pollack's cross-motion for summary judgment is granted on his first claim as to a five percent rate of compensation for his representation of Crocker in all contract negotiations, but not as to the issue of which contracts Pollack actually negotiated. Pollack's cross-motion for summary judgment also is granted as to his third and fourth claims.

SO ORDERED.